# Person & Riegel Company v. Lipps, Appellant.

*Contract—Offer and acceptance—Corporations—Subscription to stock.*

Where the owner of a store building offers to lease the same to a trading corporation, and as an inducement to the company to take the lease, offers to provide a large sum of money in cash for an issue of the preferred stock of the company, and such offer is accepted by the corporation, the transaction establishes a valid contract between the parties based upon sufficient consideration, and not lacking mutuality.

In such a case an acceptance of the offer will be implied, apart from any formal acceptance by the board of directors, where it appears that the offer was made to the director and general manager of the company

by whom it was communicated to several directors, that subsequently in pursuance of the offer the board summoned a stockholders' meeting to increase the capital stock to furnish the preferred stock contemplated by the offer, that such increase was subsequently authorized by the stockholders, and that the person making the offer was elected a director, appointed on a committee to carry out the arrangement contemplated, and made statements in writing which indicated that he understood that the corporation had accepted his offer.

*Corporations—New Jersey corporations—Capital stock—"Capital paid in cash or property."*

The provision in the New Jersey corporation act prior to the amendment of 1901, that "at no time shall the total amount of preferred stock exceed two-thirds of the actual capital paid in cash or property," is to be construed as meaning that the preferred stock shall not exceed two-thirds of the actual property of the company. The words "actual capital" in the act do not mean capital stock.

There is a distinction between the capital of a corporation and its capital stock, though they are often used as interchangeable terms. The capital stock is clearly not the same as property possessed by the corporation; for the capital stock remains fixed although the actual property of the corporation varies in value, and is constantly increasing or diminishing in amount. What the amount of the capital shall be is within the discretion of the managers, but the amount of the capital stock is limited and determined by the charter and the law governing it.

*Contracts—Breach of contract—Agreement to purchase stock of a corporation—Measure of damages.*

Where a person agrees to purchase the preferred stock of a corporation for a large sum in cash, but fails to carry out his contract, the measure of damages for the breach is the difference between the amount of the cash mentioned and the amount actually paid by the purchaser or procured to be paid through his efforts for the preferred stock.

*Practice, C. P.—Charge—Points.*

Where a trial judge properly answers points submitted to him, he is not obliged to repeat the same instructions in the general charge.

*Practice, C. P.—Sending out statement of claim with jury.*

It is not reversible error for the court to permit the statement of claim to go out with the jury, where the statement is a mere calculation of the amount claimed by plaintiff, and the court properly cautions the jury as to the use they are to make of it.

*Evidence—Foreign document—Foreign corporation—Certificate of increase of stock.*

It is no ground for refusing to admit in evidence the certificate of the increase of the stock of a New Jersey corporation, that the certif-

icate of the secretary of state does not have upon it the great seal of the state of New Jersey, and is not in the form required by the act of congress.

Argued March 11, 1907.   Appeal No. 160, Jan. T., 1906, by defendant, from judgment of C. P. Northampton Co., Dec. T., 1902, No. 27, on verdict for plaintiff in case of Person & Riegel Co. v. E. J. Lipps.   Before Fell, Brown, Mestrezat, Potter and Elkin, JJ.   Affirmed.

Assumpsit for breach of contract to purchase stock of a corporation.

Schuyler, P. J., charged in part as follows:

[The first question is, did the defendant enter into the contract upon which is based this action?   Now, as to what that contract is alleged to be I find it stated so clearly in the statement of claim in this case in paragraphs 2 and 3 that I will adopt the language used in those paragraphs rather than substitute for that any language of my own.   The allegation in these paragraphs is that the defendant in the year 1900, and for a number of years, etc., proposed to plaintiff that plaintiff lease a certain property from its owners in which defendant was interested, and increase its capital stock from $50,000 to $125,000, of which increase $75,000 should be common stock and $50,000 preferred stock; that the defendant would purchase from plaintiff $10,000 of the common stock and provide $50,000 cash for the $50,000 worth of preferred stock, with an option to defendant to purchase $5,000 additional common stock, and suggested that the proposition so made by the defendant be submitted to the officers of the plaintiff company which was done and accepted by the company.   In pursuance of said agreement the capital stock of said plaintiff company was increased to $125,000 as agreed upon.   Plaintiff executed as lessee a five years' lease for said property in Milwaukee, and in all respects complied with the agreement above mentioned.   That is the alleged contract upon which this action is based, and the first question for your determination is, did the defendant enter into this contract? You have heard the testimony bearing upon that branch of the case.   It is voluminous, but it is for your determination.

You are simply to determine the effect of that testimony. It has been discussed in your presence ably and fully by counsel upon both sides, and I will not attempt to improve upon what has been said by counsel with reference to the testimony bearing upon the first branch of this case.

Now, taking that testimony, you will say whether or not the defendant entered into the contract upon which the present action is based. The burden is upon the plaintiff to satisfy you by the weight of the evidence that the defendant did enter into the contract. If you find that the plaintiff has failed to satisfy you by the weight of the evidence that the contract was entered into by the defendant, then you need inquire no further, because if the defendant did not enter into the contract the plaintiff cannot recover. If, however, you find after giving this branch of the case the careful consideration which I know you will give to it that the plaintiff did enter into the contract, then the second question is, has there been a breach on the part of the defendant of the contract?] [17]

[Now, here again the burden is upon the plaintiff to satisfy you by the weight of the evidence that there has been such a breach, but before you can pass upon that question intelligently it will be necessary for you to know from the court what the legal effect of the language used at the time it is alleged that this contract was entered into is. You will remember that the plaintiff claims that the contract was that the defendant agreed to provide $50,000 worth of cash for $50,000 of the preferred stock. I say to you as the law of this case that the contract between the parties, if such a contract was entered into at all, was a contract to provide $50,000 worth of cash, and nothing more. What is said with reference to the $50,000 of preferred stock is said for the purpose of providing a consideration for the alleged contract. But the simple question for the jury to say is, whether the defendant did provide this $50,000 worth of cash. The allegation of the plaintiff is that he did not. The allegation of the defendant is that he did provide it.] [18]

Now, I take it that under this contract it was not necessary for the defendant to provide this money out of his own cash account—out of his own pocket. It would be a compliance with this contract if the defendant by his own instrumentality

was the cause of this cash being provided by others.   In other words, if in addition to the cash, which it is admitted he furnished out of his own pocket, he was instrumental in raising the difference between the amount which he paid out of his own pocket and the $50,000, that would be a compliance with the terms of the contract.   Now, that is an important part of this case.   You will give it your careful and serious attention.   Did the defendant out of his own pocket, and was he instrumental in providing the full amount of the $50,000? If he was, then there can be no verdict against him.    Then again your verdict would be a verdict in favor of the defendant.   [If, however, you find that the defendant did enter into this contract and that he did not furnish the full amount of the $50,000 called for by the contract, then the next question to be considered is as to what is the proper measure of damages for the violation of the contract.   Upon that point I say to you that his contract, as I have already said, was a contract to furnish cash.   It was that pure and simple—furnish cash to the amount of $50,000.   It was his duty to furnish that amount of cash, if you find that he entered into this contract.   Then the amount of your verdict would be, if you find a verdict for the plaintiff, the difference between the $50,000 and the amount of cash which he provided out of his own pocket and the amount of cash that he was instrumental in providing for the use of the company, and that difference would be the amount of your verdict.

Of course, as you understand, if he provided the full amount of cash and the full amount of the $50,000, either directly out of his own pocket or indirectly through his instrumentality, the verdict of the jury would be a verdict in favor of the defendant.   If, however, the amount of money provided by the defendant was less than the $50,000, then your verdict would be for the difference between the amount of cash actually provided, either directly or indirectly, by the defendant, and the amount of the $50,000, together with the interest upon that balance.] [19]

Verdict and judgment for plaintiff for $12,950.   Defendant appealed.

*Errors assigned* among others were (1–15) answers to vari-

ous points; (16) that the charge as a whole was inadequate and misleading; (17–19) portions of charge as above, quoting them; (20) in permitting statement of claim to go with the jury; (21) in admitting in evidence the certificate of the increase of stock.

*W. S. Kirkpatrick,* of *Kirkpatrick & Maxwell,* with him *B. F. McAtee,* for appellant.—The agreement set forth in the plaintiff's amended statement and as substantially testified to by plaintiff's witnesses, is ambiguous, indefinite and uncertain and, therefore, not a binding contract: U. S. v. Burlington, 24 Fed. Cases, 1302; Ware v. Gay, 28 Mass. 106; Jones v. Vance Shoe Co., 115 Fed. Repr. 707; Mays v. Patterson, 20 Pa. Superior Ct. 92; Wall's App., 111 Pa. 460; Sherman v. Kitsmiller, 17 S. & R. 45.

There was no acceptance on the part of the corporation plaintiff of the alleged offer of the defendant: Joseph v. Richardson, 2 Pa. Superior Ct. 208; Clements v. Bolster, 6 Pa. Superior Ct. 411.

The acceptance of an offer to constitute a contract must be unqualified and identical with the terms of the offer: Swing v. Walker, 27 Pa. Superior Ct. 366; Slaymaker v. Irwin, 4 Wharton, 369; Allen v. Kirwan, 159 Pa. 612; Vincent v. Woodland Oil Co., 165 Pa. 402; Mayo v. Koller, 28 Pa. Superior Ct. 91; Huber Mfg. Co. v. Smithgall, 19 Pa. Superior Ct. 641; Minn., etc., Ry. Co. v. Columbus Rolling Mill Co., 119 U. S. 149 (7 Sup. Ct. Repr. 168).

To establish a contract by an acceptance of the proposition it must appear that the party making the proposition is notified of the acceptance: Emerson v. Graff, 29 Pa. 358; Borland v. Guffey, 1 Grant, 394; Shupe v. Galbraith, 32 Pa. 10; Warren Boro. v. Daum, 73 Pa. 433.

There was no mutuality of obligation in the alleged contract: Transportation Co. v. Bolt & Nut Co., 114 Fed. Repr. 77; Cotton Oil Co. v. Kirk, 68 Fed. Repr. 791; R. R. Co. v. Dane, 43 N. Y. 240; Davie v. Lumberman's Mining Co., 53 N. W. Repr. 625; Crane v. Crane & Co., 105 Fed. Repr. 869.

There was no performance nor ability to perform the conditions of the alleged contract on the part of the plaintiff: Com. v. Lehigh Avenue Ry. Co., 129 Pa. 405; Christensen v. Eno,

106 N. Y. 97 (12 N. E. Repr. 648); State v. Morristown Fire Assn., 23 N. J. L. 195; Bailey v. Clark, 88 U. S. 284.

The court erred as to the measure of damages: Richards v. Willard, 176 Pa. 181; Stuart v. Line, 11 Pa. Superior Ct. 345; Tietz v. Phila. Traction Co., 169 Pa. 516.

*W. E. Doster* and *H. J. Steele,* for appellee.—When a person agrees to take or to purchase shares, the intention is ordinarily held to be to buy the certificates representing the shares. Whether or not it is such a contract, of course, depends upon the intention of the parties. If the payment of the price and delivery of the stock are intended to be concurrent acts, the contract will clearly be that of a purchase and sale: N. Y., etc., R. R. Co. v. Hunt, 39 Conn. 75; Rhey v. Ebensburg, etc., Plank Road Co., 27 Pa. 261; Bratten v. Catawissa R. R. Co., 211 Pa. 21.

A contract need not state the time of the performance, as it will be held that the parties meant a reasonable time: Atwood v. Cobb, 33 Mass. 227; Van Woert v. R. R. Co., 67 N. Y. 538; Page on Contracts, 44; Worthington v. Beeman, 91 Fed. Repr. 232; Thompson v. Stevens, 71 Pa. 161; Northern Cent. R. R. Co. v. Walworth, 193 Pa. 207; Lulay v. Barnes, 172 Pa. 331.

There was an implied acceptance of the offer: McMasters v. Reed, 1 Grant, 36; Fitzgerald & Mallory Const. Co. v. Fitzgerald, 137 U. S. 98 (11 Sup. Ct. Repr. 36); Hoffman v. R. R. Co., 157 Pa. 174; Weaver v. Wood, 9 Pa. 220; Corson v. Mulvany, 49 Pa. 88; Grove v. Hodges, 55 Pa. 504.

The distinction between the value of the property of the incorporated companies, and their capital stock, is perfectly familiar: Brown v. French, 80 Fed. Repr. 166; State v. Morristown Fire Assn., 23 N. J. L. 195.

The measure of damages was properly stated: McDowell's App., 123 Pa. 381; Herd v. Thompson, 149 Pa. 434; Unexcelled Fireworks Co. v. Polites, 130 Pa. 536; Guillon v. Earnshaw, 169 Pa. 463; Corser v. Hale, 149 Pa. 274.

In a civil case, when no request is made, the mere omission to charge upon a particular point is no ground of error: Phila. & Reading R. R. Co. v. Getz, 113 Pa. 214; Fox v. Fox, 96 Pa. 60; Reeves v. D., L. & W. R. R. Co., 30 Pa. 454; R. R. Co. v. Brandtmaier, 113 Pa. 610.

There was no error in letting the statement of claim go out with the jury : Frazier v. Funk, 15 S. & R. 26.

As a general rule, with some exceptions, the sending out of papers with the jury is regulated by the sound discretion of the court: Navigation Co. v. Richards, 57 Pa. 142 ; Spence v. Spence, 4 Watts, 165.

The certificate of increase of stock was properly received in evidence: Bartlett v. Wilbur, 53 Md. 485 ; Grant v. Coal Co., 80 Pa. 208 ; Wigmore on Evidence, sec. 1674.

OPINION BY MR. JUSTICE BROWN, October 21, 1907 :

The first contention of the appellant is that the agreement declared upon is ambiguous, indefinite and uncertain and, therefore, not a binding contract.   The plaintiff's statement sets forth that in the year 1900, and for a number of years previous thereto, it was engaged in the dry goods business in the borough of Bethlehem ; that during the month of October, 1899, the defendant called upon M. J. Person, its manager, and stated that he was interested in a store property located in the city of Milwaukee, Wisconsin, which had' been occupied for years as a dry goods store and which at that time was doing a very extensive business and making large profits ; that he then proposed to the plaintiff that it lease said property from its owners and increase its capital stock from $50,000 to $125,000, of which increase $75,000 should be common stock and $50,000 preferred stock ; that he would purchase from it $10,000 of the common stock and provide $50,000 cash for the $50,000 worth of preferred stock, with the option to him to purchase $5,000 additional of the common stock, and suggested that the proposition so made by him be submitted to the officers of the plaintiff company ; that this proposition was submitted to its officers and accepted by it.   By the terms of the agreement, as set forth in the statement, and which the jury have found that appellant made, he agreed, for a valuable consideration—the leasing by the appellee of property in which he was interested—to provide $50,000 cash for the $50,000 of preferred stock which he proposed the company should issue.   There is nothing ambiguous, indefinite or uncertain about this.   The terms of the agreement can be misunderstood by no one, and the first ques-

tion for the jury's consideration was whether defendant had made it. It is true the agreement fails to state how he was to provide the $50,000 cash for the stock, but that was of no concern to the appellee. It was sufficient for it to know that he had agreed to make provision for $50,000 in cash for the stock. The company was to issue the same and receive the money for it, to be provided by the party with whom it made its contract. He could have provided the cash by taking the stock himself and paying for it or having others take it and pay for it. This is the unambiguous meaning of the agreement. No time was set for providing this money, and the appellant was entitled to a reasonable time to provide it. He makes no complaint that such time was not given him. His reason for not complying with his agreement when asked to do so, according to the testimony submitted by the appellee, was simply that he had changed his mind.

But it is next contended that even if the proposition, as testified to by appellee's witnesses, was sufficiently definite and certain for the purposes of a contract, there was no evidence of its acceptance by the company. There was no action by the board of directors formally accepting the offer, and it was not necessary that there should be such action to bind the appellee as one of the contracting parties. It was necessary that the proposition be accepted before the appellee could be held to it, but its acceptance could be implied, and if, from what the company did, it intended that the appellant should understand it to have accepted his offer, and his conduct indicated that he regarded the same as having been accepted, he cannot be heard to say, in his effort to avoid his agreement, that it was not accepted. This is the rule as between natural persons, and no other applies when either or both of the contracting parties are corporations. The evidence from which the jury found that the proposition had been accepted was ample. It was first made by the appellant to Person, the director and general manager of the appellee. He called an informal meeting of its board of directors, at which four of the five were present. The appellant then repeated his proposition to these directors. A meeting of the board was thereupon regularly called for January 8, 1900, at which all the members were present. The vice president of the company reported that a

proposition had been made by some gentlemen to increase the capital stock by the addition of $75,000, and offered a resolution for a meeting of the stockholders, the object of their meeting being to pass upon the question of increasing the capital stock of the company. The resolution was adopted and the president was authorized to appoint a committee to confer with Mr. Krauthoefer in reference to the lease of the Milwaukee store, with power to act. He was the agent of the owners of the property. At a meeting of the stockholders held on January 22, 1900, the increase of the capital stock was authorized as proposed by the appellant. On April 9 following he was elected a director of the company. On May 15 of the same year, at a meeting of the board, the minutes show that, " On motion of G. O. Albright, a committee, composed of Messrs. Lipps, Person and Riegel, be empowered to purchase fixtures and other necessary articles to equip the store in Milwaukee, Wis., at a cost not to exceed $2,000, and to agree with the owners upon the alterations to be made ; " and then, on motion of Lipps himself, he was appointed a committee of one to go to Milwaukee and sell the $50,000 of preferred stock of the company. What must have seemed to the jury conclusive evidence that he regarded his proposition as accepted, is his letter of August 25, 1900, addressed to Marshall Field & Company, in which he writes : " I am the trustee and one of the heirs of my father's estate, which consists of real estate in the city of Milwaukee. . . . The Boston store occupied it for the last three years and as their lease expired last May I did not renew the same, but reorganized the Person & Riegel Company to conduct their business there. The reorganization gives them a capital of $75,000 common and $50,000 preferred stock." Having found that Lipps made the proposition, to have found that it had not been accepted by the company would have been a finding in the very teeth of the evidence.

A third contention of the appellant is that there was no mutuality of obligation in the alleged contract. Of this we need say no more than that the acceptance of his proposition made the agreement mutual.

The fourth reason given by the appellant why there should have been no recovery against him is that there was no performance on the part of the plaintiff of the conditions of the

alleged contract, nor ability to perform them.  The only thing said in support of this that we feel called upon to notice is that the " preferred stock was an over issue, and consequently illegal and ultra vires."  The appellee is a corporation organized under the statutes of New Jersey, and by an act in that state, in force in November, 1900, at the time the appellant is alleged to have broken his contract, it is provided that " every corporation shall have power to create two or more kinds of stock of such classes, with such designations, preferences and voting powers, or restrictions or qualifications thereof, as shall be stated and expressed in the certificate of incorporation ; and the power to increase or decrease the stock, as in this act elsewhere provided, shall apply to all or any of the classes of stock; but at no time shall the total amount of preferred stocks exceed two-thirds of the actual capital paid in cash or property." It is to be noted that this act does not provide that the total amount of the preferred stock shall not exceed two-thirds of the capital stock, but of the " capital paid in cash or property."  As amended in 1901, the act does contain a provision that preferred stock shall not exceed two-thirds " of the capital stock paid for in cash or property."  It is evident, from a comparison of the original act with its amendment, that the legislature regarded the difference between the capital and capital stock of a corporation ; and there is a well-understood distinction, universally recognized, between " the capital or property" of incorporated companies and " their capital stock."  " The term ' capital' applied to corporations is often used interchangeably with ' capital stock,' and both are frequently used to express the same thing,—the property and assets of the corporation—but this is improper.  The capital stock of a corporation is the amount subscribed and paid in by the shareholders, or secured to be paid in, and upon which it is to conduct its operations ; and the amount of the capital stock remains the same, notwithstanding the gains or losses of the corporation.  The term ' capital,' however, properly means not the capital stock in this sense, but the actual property or estate of the corporation, whether in money or property.  As was said in a New York case, ' It is the aggregate of the sums subscribed and paid in, or secured to be paid in by the shareholders, with the addition of all gains or profits realized in the

use and investment of these sums, or if losses have been incurred, then it is the residue after deducting such losses.' It follows, that a corporation's capital may be many times greater than its capital stock, and it is this which makes the shares of stock of a corporation worth more on the market than their par value :" Clark and Marshall on Corporations, 1140. " There is a distinction between the capital of a corporation and its capital stock, though they are often used as interchangeable terms. The capital stock is clearly not the same as property possessed by the corporation; for the capital stock remains fixed although the actual property of the corporation varies in value, and is constantly increasing or diminishing in amount. What the amount of the capital shall be is within the discretion of the managers, but the amount of the capital stock is limited and determined by the charter and the law governing it. It follows, therefore, that a limit imposed upon the capital stock of a corporation, does not restrict the amount of property which it may own. Upon the distinction between the capital of a corporation, which is its property, and the capital stock which represents the interests of the stockholders in the corporation, and is their property, the power of the states to subject the shares of national banking associations to taxation is based:" 2 Beach on Corporations, sec. 466. What is the evidence as to the ability of the company to issue its $50,000 of preferred stock in compliance with the statute of New Jersey in force in 1900 ? Lipps himself furnished it. In a letter written by him to Marshall Field & Company on August 25, 1900, he wrote: " The Person & Riegel Company's stock at the inventory taken May 1st, at very low prices, showed a value of $64,000. Unpaid bills and all other indebtedness $6,000." Within the four months succeeding May 1, 1900, he subscribed for 326 shares of the common stock of the company, and the same were issued to him. The par value of that stock was $16,300. During the same period there were issued to Ferdinand Weyland forty shares of the common stock, the par value of which was $2,000. Deducting from the inventoried value of the stock—$64,000—the total indebtedness of the company on May 1—$6,000—its assets amounted to $58,000, and if to this be added the $18,300, the par value of the common stock issued to Lipps and Weyland, the capital

or property of the company was $76,300—$1,300 in excess of what was necessary to enable it to issue its preferred stock.

The fifth and sixth complaints of the appellant are to the damages recovered and the measure of them adopted by the court in its charge. According to the evidence, there was an actual breach of the contract by the appellant, resulting in great loss to the appellee, and the only measure of damages that could have been fixed was the one given to the jury. Upon this point the learned trial judge said clearly : " I say to you that this contract, as I have already said, was a contract to furnish cash. It was that pure and simple—furnish cash to the amount of $50,000. It was his duty to furnish that amount of cash, if you find that he entered into this contract. Then the amount of your verdict would be, if you find a verdict for the plaintiff, the difference between the $50,000 and amount of cash which he provided out of his own pocket, and the amount of cash that he was instrumental in providing for the use of the company, and that difference would be the amount of your verdict."

The sixteenth specification of error is to the charge as a whole, and appellant's sixth complaint is that it did not adequately present to the jury the questions involved. The charge was brief, and commendably so, for it was long enough to present with great clearness the three questions involved : First, did the appellant enter into the contract upon which the action was based ? Second, did he break it ? And, third, what damages should be awarded to the plaintiff if there was a breach ? If instructions were desired upon certain features of the case, they could have been asked for, and, if improperly given, would be subject to correction here. That the learned counsel for appellant knew this was their privilege is evident from the sixteen points submitted by them, fourteen of which were requests for specific instructions. These were given on some of the very features of the case to which it is now contended the trial judge should have referred in his general charge. He might have done so but for the points submitted to him ; and he was not called upon to do so twice. Having said to the jury all that he was required to say to them to enable them to intelligently understand what the issue was be-

fore them in this civil case, his failure to say what he might properly have said, if asked to do so, is not to be regarded as error. "Mere omissions to say what might have been properly said, are no just ground of complaint by a party who submitted no propositions, and suggested no views of the testimony for the consideration of the court. Judges are entitled to expect this kind of assistance from counsel, and when it is not rendered, counsel may still have the benefit of errors of commission, but they should not complain of omissions:" Reeves v. Delaware, Lackawanna and Western Railroad Company, 30 Pa. 454.

The twentieth assignment of error complains of the permission given to the plaintiff to send out the statement of its claim with the jury. It was a mere calculation of the amount which the appellee claimed to be due under the evidence, and, in permitting it to go to the jury, the trial judge, with proper caution, said : " I have permitted the plaintiff to send out a state of what it claims to recover. I merely want to caution you by saying that that is not to be the amount of your verdict simply because the statement claims it. You will remember that the defendant claims that the whole amount of this $50,000 was paid for in cash, and whilst the defendant does not send out a statement you are not to lose sight of what the defendant claims in that reference." Under the circumstances there was no error in permitting the statement to go out. " With reasonable caution on the part of the court, no unfairness can be practiced in sending out a paper such as this ; of its consequences, no test is so good as experience, and that proves not only its fairness, but its great utility. Indeed, where accounts are submitted to a jury, it would be impossible to get along without it. It originated with mutual convenience and the agreement of parties ; but it has prevailed, so long and so uninterruptedly, as to have grown to be a rule of practice, and as such we are not bound to disturb it. It is, doubtless, susceptible of abuse ; and the court ought to see that what purports to be a mere statement of particulars, be so in fact, that it be subservient only to purposes of calculation, and contain no item of which, at least, evidence has not been given ; thus restricted, a statement of particulars will afford salutary assistance to jurors, who are seldom expert at accounts. There

was, therefore, no error in permitting the paper to go out:" Frazier's Administrators v. Funk, 15 S. & R. 26.

By the twenty-first and last assignment we are asked to say that the court erred in admitting the certificate of the increase of the appellee's stock, because the certificate of the secretary of state did not have upon it the great seal of the state of New Jersey; and, further, that it was not in the form required by the act of congress. No authority has been cited requiring a certificate of the increase of the capital stock of a foreign corporation to bear the great seal of its state, or that it cannot be received in evidence unless certified as required by the act of congress. On the contrary, by the New Jersey statute it is declared that the certificate of the secretary of state, relating to increase of capital stock, shall be taken and accepted as evidence of such increase, if it shall certify that the assent of the stockholders to the increase has been filed in his office. Such was the certificate here, to which was affixed the official seal of the secretary of state.

All the assignments of error are overruled and the judgment is affirmed.