COMMISSIONER OF INTERNAL REVENUE v. GILMORE'S ESTATE and six other cases.

Nos. 7937–7943.

Circuit Court of Appeals, Third Circuit.

Argued May 7, 1942.

Decided Aug. 28, 1942.

---

[17] See footnote 4.

792

Samuel H. Levy, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, and Bernard Chertcoff, Sp. Assts. to the Atty. Gen., on the brief), for petitioner.

Andrew B. Young, of Philadelphia, Pa. (Richard K. Stevens, of Philadelphia, Pa., on the brief), for respondents.

Before BIGGS, MARIS, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

Under § 112(b) (3) of the Revenue Act of 1934,[1] under which this litigation arises, no gain or loss is recognized "if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization." One of the given definitions of a "reorganization" is a "statutory merger or consolidation".[2] This appeal presents two questions: first, whether the transaction, hereinafter described, between a holding company and operating company constituted a "statutory merger or consolidation" and secondly, if it did, whether it was, nevertheless, of such a character that the exchange of stock incident thereto was a taxable event.

The respondents were shareholders in the Webster Finance and Investment Company, a New Jersey holding company. They had received their shares from Warren Webster, Sr., who, upon the organization of the holding company in 1927 obtained all its shares for a bare majority of the stock of the operating company, Warren Webster and Company, incorporated in New Jersey in 1895. There is evidence in the record, although no express finding of fact by the Board, that the device of a holding company was chosen by Mr. Webster to insure that the control of the operating company remain in the hands of those active in its management and at the same time enable him to distribute non-controlling beneficial interests, the non-voting stock of the holding company which constituted half of its shares, to the members of his family and employees who at the time did not participate in its management or whose future relationship thereto was uncertain.

On October 28, 1935, the directors of the two corporations executed an "Agreement of Merger and Consolidation". The agreement provided that the operating company was to be the surviving corporation. All "rights, privileges, powers and franchises" of the holding company and "all [its] property, * * * except as otherwise provided in Article X" were to vest in the survivor. Under the latter Article, all of the assets, with the exception of the shares of the operating company, were to be distributed as a dividend to the shareholders of the holding company which was to transfer the shares it held in the operating company to the surviving corporation. There was an additional article which enumerated the powers of the surviving company.

After approval by the respective shareholders, the agreement was filed with the Secretary of State of New Jersey. The respondents, in accordance with a provision of the agreement of merger, surrendered their holding company stock to the surviving corporation and received its shares in return. The holding company stock was thereupon cancelled. The Commissioner asserted that the respondents were taxable upon the gain resulting from this exchange. The Board of Tax Appeals, two members dissenting, did not sustain his position[3] and he took this appeal.

### Was There a Statutory Merger?

■ We reject without hesitation the Commissioner's first argument that there

---

[1] 26 U.S.C.A. Int.Rev.Acts, page 692.
[2] Revenue Act of 1934, § 112(g) (1) (A),

26 U.S.C.A. Int.Rev.Acts, page 695.
[3] 1941, 44 B.T.A. 881.

was no merger. Admonished by the argument that we should apply Congressional language in the ordinary sense we think that the term used by Congress "statutory merger or consolidation" means, as Treasury Regulation 86, Art. 112(g)-2 states "a merger or consolidation effected in pursuance of the corporation laws of a State or Territory or the District of Columbia". The Commissioner's argument, based upon the dissenting opinion of the Board contends that all of the definitions of the term "merger" require that there be a transfer of property. There was no transfer of property, so it was argued, in the surrender by the holding company to the operating company of the shares of the latter corporation.

One may question whether this argument is now open to the Commissioner. A stipulation between the parties states that the "Agreement of Merger and Consolidation" was approved by the stockholders of the two companies in conformity with the general corporation law of the State of New Jersey and that the appropriate officers of the companies, following the requirements of the New Jersey statute filed the certificates with the appropriate official.[4] However, this point need not be stressed to conclusion. Possibly all that was meant to be admitted was that certain of the statutory procedures were in fact followed. The conclusion that there was a statutory merger can stand upon other bases.

The Board's finding of fact states that the officers of the companies followed the requirements of the statutes of New Jersey in filing their documents relative to the merger and that "The filing of those documents effected the merger of the two corporations." The New Jersey statutes provide for a certification by the Secretary of State of a copy of the agreement filed and that such certification "shall be evidence of the existence of such new or consolidated corporation." N.J.S.A. 14:12–3. Such certification is part of the record in this case.[5]

Furthermore, we can find no provision under the New Jersey Statutes on "Merger or Consolidation", N.J.S.A. 14:12–1 et seq., which makes it a prerequisite to a merger that there be a transfer of property as contended by the Commissioner. Section 14:12–5 does provide that when a merger or consolidation is effected "all the rights, privileges, powers and franchises * * * all * * * property [etc.] shall vest in the consolidated corporation as effectually as they were vested in the several and respective former corporations." However, this falls far short of saying that if the absorbed corporation owned no property, it could not participate in a merger. Were the Commissioner's contention valid, then it would follow that a "pure" holding company could not become a party to a merger in New Jersey. No statute or decision of that State standing for this proposition

---

[4] "10. On the 2nd day of December 1935, the said 'Agreement of Merger and Consolidation' was approved by the respective stockholders of Warren Webster and Company and W. F. I. [Webster Finance and Investment Company] in conformity with the general corporation law of the State of New Jersey.

"11. On the 5th day of December, 1935, pursuant to the authority granted by the stockholders of Warren Webster and Company and W. F. I. at the meetings referred to in paragraph hereto, marked '10', the appropriate officers of said companies following the requirements of the Statute of New Jersey entitled 'An Act concerning Corporations (Revision of 1896),' filed the said 'Agreement of Merger and Consolidation' and certificates relative to the vote of the stockholders, hereinbefore referred to as Schedule 3, in the Office of the Secretary of State of New Jersey."

[5] See Leavenworth County Commissioners v. Chicago, Rock Island & Pacific Ry., 1890, 134 U.S. 688, 701, 10 S.Ct. 708, 713, 33 L.Ed. 1064, where the Court was called upon to determine whether a consolidation had been effected. The state statute provided that a certified copy from the office of the Secretary of State of the articles of consolidation would be conclusive evidence of the consolidation. The Supreme Court quoted with approval the language of the lower court to the effect that in a suit between the consolidated corporation and an individual or other corporation "in regard to any matter affecting its rights, its powers, its authority to make contracts, to sue or to be sued, the production of the paper mentioned shall end all inquiry into its existence as a corporation, with such powers as the law confers on it." In Person & Riegel v. Lipps, 1907, 219 Pa. 99, 67 A. 1081, it was held that a certificate under the seal of the Secretary of the State of New Jersey was competent evidence to establish the fact and the validity of an increase of capital stock by a New Jersey corporation.

has been cited to us; nor have we been able to find any to this effect.

We see no basis on which it can be held that the transaction here questioned was not a merger under the New Jersey statutes and, therefore, not a literal compliance with the Act of Congress within the definitions of the New Jersey statutes and within the definitions of Treasury Regulations construing the Act of Congress.

### Was the Merger a Tax Free Transaction?

It is now settled that whether a transaction qualifies as a reorganization under the various Revenue Acts does not turn alone upon compliance with the literal language of the statute. The judicial interpretation has determined that something more may be needed and that, indeed, under some circumstances, something less will do.[6] Our concern in this case is the "something more" since we have concluded that there was a literal compliance.

The starting point is Gregory v. Helvering, 1935, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355.[7] The difference between that case and the one here to be decided is clear. The new corporation was set up for temporary purposes and dissolved when it had accomplished the purpose for which it was created, namely, to get part of the holdings of the old corporation into the hands of its shareholders. A distribution in fact was accomplished and the question was whether having made formal compliance with the statute the distribution escaped classification as a taxable event. Despite the petitioner's description of the events in the instant case as devious mechanics we see no such situation in this case as that presented in Gregory v. Helvering.[8]

The reorganization provisions were enacted to free from the imposition of an income tax purely "paper profits or losses" wherein there is no realization of gain or loss in the business sense but merely the recasting of the same interests in a different form, the tax being postponed to a future date when a more tangible gain or loss is realized.[9] This is recognized by the Treasury Regulations.[10] They state that: "The purpose of the reorganization provisions * * * is to except from the general rule certain specifically described exchanges * * * which effect only a readjustment of continuing interests in property under modified corporate forms. Requisite to a reorganization under the Act are a continuity of the business enterprise under the modified corporate form, * * * continuity of interest therein on the part of those persons who were the owners of the enterprise prior to the reorganization."

In this case we have two corporations established long before the transaction in question, an operating company and a holding company. They desire to get rid of the holding company. The shareholders of the holding company were the majority owners of the operating company. By reason of the plan chosen they received the shares they had theretofore held indirectly through the holding company. There was no conversion into cash on withdrawal. Rather, the entire history of the two corporations reveals that the interests obtained through the merger

---

[6] Helvering v. Alabama Asphaltic Limestone Co., 1942, 315 U.S. 179, 62 S.Ct. 540, 86 L.Ed. ——.

[7] The facts were these: the taxpayer owned all of the stock of the United Mortgage Corporation which owned 1,000 shares in another corporation. She caused to be organized the Averill Corporation to which the 1000 shares were transferred by United in exchange for its stock going to taxpayer. Six days later Averill was dissolved, the 1,000 shares, its sole asset, being distributed to taxpayer who immediately sold them. Averill never transacted any business.

[8] The Gregory case was the subject of criticism (which we do not share) as imposing a requirement not found in the statute. It was therefore argued that it should be limited to the facts of the case.

Rudick, The Problem of Personal Income Tax Avoidance (1940) 7 Law and Cont. Problems, 243, 254; Fahey, Income Tax Definition of "Reorganization" (1939) 39 Col.L.Rev. 933, 936 et seq.; Hendricks, Developments in the Taxation of Reorganizations (1934) 34 Col.L.Rev. 1198, 1205 et seq., discussing the decision of the Circuit Court of Appeals, Helvering v. Gregory, 2 Cir., 1934, 69 F.2d 809 which was affirmed by the Supreme Court, 293 U.S. 465, 55 S.Ct. 266, 79 L. Ed. 596, 97 A.L.R. 1355. But cf. Note, Corporate Reorganization to Avoid Payment of Income Tax (1935) 45 Yale L.J. 134 and see Magill, Taxable Income (1936) p. 141.

[9] See Seidman's Legislative History of Federal Income Tax Laws (1938) pp. 795, 796, 332–340.

[10] Treas.Reg. 86, Art. 112(g)-1.

were to be continuing and the surviving corporation kept on doing business with no change in management or personnel after the merger.[11] We have, then, a genuine transaction in the sense that it was operating upon the situation of the companies as they stood. We have the continuity of uninterrupted corporate existence of the merged company and the interest of all prior owners therein, except, of course, of the dropping out of the holding company. Are there further requirements?

■ Argument for the Commissioner maintains that what has been done is still not enough. The result to be reached through this merger, it is said, could have been reached more directly by an out and out liquidation which, of course, would have been taxable under § 115(c).[12] Granted that the elimination of the holding company as a subject for taxation was a legitimate business object, it does not follow that the method taken in getting rid of it is a tax-free method.[13] We think this gets down to the proposition that if there are two ways of accomplishing a legitimate business result, one of which clearly creates a taxable transaction, one is equally subject to tax liability if he chooses the other unless there is an adequate business reason for the particular method used. We do not think this is the rule of the statute, the Regulations, nor, as we read them, the decisions.[14] The cases cited by the appellant do not extend the Gregory doctrine this far. In each of them, that which was

---

[11] See Chisholm v. Commissioner of Internal Revenue, 2 Cir., 1935, 79 F.2d 14, 15, 101 A.L.R. 200, certiorari denied, 1935, 296 U.S. 641, 56 S.Ct. 174, 80 L. Ed. 456. Petitioner and four others transferred all the shares of an engineering corporation to a partnership which then performed the option given to another corporation to purchase them. After the sale the partnership continued to do business. The Commissioner sought to tax them then upon the sale, contending that the transaction was governed by Gregory v. Helvering. The court did not agree and said of the Gregory case, "the incorporators adopted the usual form for creating business corporations; but their intent, or purpose, was merely to draught the papers, in fact not to create corporations as the court understood that word. That was the purpose which defeated their exemption, not the accompanying purpose to escape taxation; that purpose was legally neutral. Had they really meant to conduct a business by means of the two reorganized companies, they would have escaped whatever other aim they might have had, whether to avoid taxes, or to regenerate the world."

[12] Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 703.

[13] The respondents assert that there were numerous additional objects:

1. The original purpose for the existence of the holding company, that the control of the operating company remain in those most active in its management, had been served and could be further fulfilled more satisfactorily by trusts and other means.

2. Holding companies were being regarded unfavorably by current legislation and taxing acts. This is in accordance with the Board's statement.

3. Corporate expenses, other than taxes would be decreased if there were only one corporation.

4. A merger would be the most appropriate means of solving some of the problems encountered because some of the holding company stock was held by fiduciaries.

5. The powers of the operating company had to, for business reasons, be enlarged and a merger would accomplish this.

Query, whether the first and fourth reasons may be termed "business" exigencies. As to the fifth, the Board stated that the merger did accomplish this. However, as the Commissioner pointed out, it does not appear that this is the fact. The merger agreement provided "The objects and purposes * * * shall include and be the objects and purposes for which Warren Webster and Company, * * * was formed, * * * and shall include the following objects: [enumerating]". This of course does not disclose what the powers of the operating company had been theretofore nor that the powers enumerated are new. Nor do other facts in the record supply this information.

[14] In considering such a question reliance is not to be placed too much on general statements either as to liability or non-liability, although equitable dicta are easily found. For example, "Where for legitimate business purposes a person has a choice of conducting his business transactions without tax liability, such a liability does not arise simply because it would have arisen if another process had been chosen." Commissioner of Internal Revenue v. Kolb, 9 Cir., 1938, 100 F.2d 920, 926. One may match the petitioner's quotation that "A given result at the end of a straight path is not made a different result because reached by following a devious path." (from the Minnesota Tea Co. v. Helvering case, infra,

attempted to be accomplished in a tax-free manner was not within the spirit and purpose of the reorganization provisions.[15] On the other hand, in a recent case, the Supreme Court employed the Gregory principle to bring within the reorganization provisions a transaction which technically could have been excluded where basically there was present a continuity of interest but in a different form so that the transaction was within the spirit of the exemption provision.[16] These authorities, we believe, support a negative answer to the question posed. Both parties have cited a group of cases arising out of the reorganization of the General Baking Company.[17] While what transpired there as a result of the reorganization of the parent and subsidiary corporations was far more complicated, we find that the principle which withdrew them from the condemnation of Gregory v. Helvering underlies also the present case.[18] As was said in one of those cases,[19] the fact of there be-

302 U.S. at page 613, 58 S.Ct. at page 395, 82 L.Ed. 474;) with "The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted." (from Gregory v. Helvering, supra, 293 U.S. at page 469, 55 S.Ct. at page 267, 79 L.Ed. 596, 97 A.L.R. 1355). Cf. Magill, Taxable Income (1936) 141, f.n. 49.

15 Thus in two of the cases, there was rather than a distribution to shareholders, a payment to creditors. Minnesota Tea Co. v. Helvering, 1938, 302 U.S. 609, 58 S.Ct. 393, 82 L.Ed. 474; United States v. Hendler, 1938, 303 U.S. 564, 58 S.Ct. 655, 82 L.Ed. 1018. In Helvering v. Elkhorn Coal Co., 4 Cir., 1937, 95 F.2d 732, certiorari denied, 1938, 305 U. S. 605, 59 S.Ct. 65, 83 L.Ed. 384, rehearing denied, 1938, 305 U.S. 670, 59 S.Ct. 141, 83 L.Ed. 435, there was no transfer of all the assets as required by the Revenue Act. In two other cases, there was lacking the continuity of interest which would bring the transaction within the exemption provisions for the courts found that what really had been accomplished was a sale of assets. Morgan Mfg. Co. v. Commissioner of Internal Revenue, 4 Cir., 1941, 124 F.2d 602; Worcester Salt Co. v. Commissioner of Internal Revenue, 2 Cir., 1935, 75 F.2d 251. In Starr v. Commissioner of Internal Revenue, 4 Cir., 1936, 82 F.2d 964, certiorari denied, 1936, 298 U.S. 680, 56 S.Ct. 948, 80 L.Ed. 1401, the device chosen was such as to enable the shareholders to convert their interests into cash and thus realize a tangible profit.

16 Helvering v. Alabama Asphaltic Limestone Co., 1942, 315 U.S. 179, 183, 62 S.Ct. 540, 86 L.Ed. 775. A creditors' committee had acquired the assets of an insolvent corporation and transferred them to a new corporation for its stock which went to the creditors of the old corporation. The Court held that there was a continuity of interest in the creditors from the time they instituted bankruptcy proceedings against the insolvent and that the transitional stage of the creditor's committee did not disrupt that continuity.

17 Helvering v. Leary, 4 Cir., 1938, 93 F.2d 826; Helvering v. Schoellkopf, 2 Cir., 1938, 100 F.2d 415; Commissioner of Internal Revenue v. Kolb, 9 Cir., 1938, 100 F.2d 920; Commissioner of Internal Revenue v. Whitaker, 1 Cir., 1938, 101 F.2d 640; Commissioner of Internal Revenue v. Food Industries, Inc., 3 Cir., 1939, 101 F.2d 748.

18 In Helvering v. Leary, supra, the court said at page 828 of 93 F.2d: "The interest of the stockholders of the Maryland Corporation in the business owned by the New York Company and the Maryland Corporation, the holding company, remained, with but slight change, in the property owned by the New York Company after the plan was carried out. It seems clear that such a situation results, in its legal effect, in a reorganization within not only the letter but the spirit of the taxing statute and brings the transaction within that class which Congress plainly intended not to tax until the stockholder finally disposed of his stock and his profit was definitely ascertainable. There was no change in the taxpayer's position with respect to the ownership of the property but merely a change in the form of the stock certificates held by him." See also f.n. 19 infra.

19 Helvering v. Schoellkopf, supra, 100 F.2d at page 417: "The truth is that the liquidation of a holding company is one of those corporate changes which might properly have been made exempt anyway; and indeed §§ 371, 372 and 373 of the Act of 1938, 26 U.S.C.A. §§ 330–330b [26 U.S.C.A. Int.Rev.Code §§ 371–373], have now made it so in certain cases. The underlying purpose of the exemptions in § 112 is to disregard corporate manipulations which do not substantially affect the shareholders' interest in the properties. Apparently the liquidation of a holding company was not thought of as such a case, and for that reason it was made taxable; but we need not wince when this hiatus is filled by what appears to be an insufficient occasion."

ing a merger of a holding company with an operating company does not deny it the exemption provided by the Act.

Our conclusion is that what took place between these companies was a "reorganization in reality", to use the language of the court in the Gregory case, and that it complies with the statutes and the decisions under it.

The decisions of the Board of Tax Appeals are affirmed.