ALCAZAR HOTEL, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109580.   Promulgated April 6, 1943.

*Earl W. Wallick, Esq.*, for the petitioner.

*T. F. Callahan, Esq.*, and *Walter K. Wood, Esq.*, for the respondent.

874

OPINION.

DISNEY, *Judge:* We have here to determine the proper basis for depreciation of the petitioner's hotel buildings and equipment, which, under the provisions of section 114 (a) of the Internal Revenue Code,[1] is the same as the adjusted basis for the determination of gain. Petitioner's contention is that it acquired the property in a tax-free reorganization, and that its basis is, therefore, the same as that of the Heights Hotel Co., the predecessor corporation. Respondent, on the other hand, takes the position that fair market value of the property on June 30, 1936, the date petitioner acquired it, furnishes the proper basis. He argues, first, that there was not a reorganization, and, second, that even if there were, the applicable provisions of the National Bankruptcy Act require the reduction of petitioner's basis to fair market value on the date of the transfer.

Basis for determining gain or loss is dependent upon section 113 of the Internal Revenue Code, the pertinent provisions of subsection (a) of which are set forth in the margin.[2] Clearly, those provisions are applicable here if the transfer in question occurred in connection with a reorganization. Section 112 (g) (1) (B) of the Revenue Act of 1936, as originally enacted, provides as follows:

(g) DEFINITION OF REORGANIZATION.—As used in this section and section 113—
(1) The term "reorganization" means * * * (B) the acquisition by one corporation in exchange solely for all or a part of its voting stock: of at least 80 per centum of the voting stock and at least 80 per centum of the total

---

[1] SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.
(a) BASIS FOR DEPRECIATION.—The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 113 (b) for the purpose of determining the gain upon the sale or other disposition of such property.

[2] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.
(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—
 *  *  *  *  *  *  *
(7) TRANSFERS TO CORPORATION.—If the property was acquired—
 *  *  *  *  *  *
(B) in a taxable year beginning after December 31, 1935, by a corporation in connection with a reorganization, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. This paragraph shall not apply if the property acquired consists of stock or securities in a corporation a party to the reorganization, unless acquired by the issuance of stock or securities of the transferee as the consideration in whole or in part for the transfer.

number of shares of all other classes of stock of another corporation; or of substantially all the properties of another corporation, * * *

Clause (B) was amended by section 213 (g) (1) of the Revenue Act of 1939 to read as follows:

(B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substantially all the properties of another corporation, but in determining whether the exchange is solely for voting stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded; or the acquisition by one corporation in exchange solely for all or a part of its voting stock of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation * * *

Section 213 (g) (2) of the 1939 Act provides:

(2) The amendments made by paragraph (1) to the respective Acts amended shall be effective as to each of such Acts as of the date of enactment of such Act.

The effect of the 1939 amendment was to create an exception to the prior requirement that the transfer be in exchange solely for voting stock of the acquiring corporation, and it is given the retroactive effect for which provision is made in paragraph (2). *Helvering* v. *Southwest Consolidated Corporation*, 315 U. S. 194. As so amended, the applicable provision of the 1936 Act is identical with the corresponding section of the Internal Revenue Code in force during the taxable year.[3] In *Schweitzer & Conrad, Inc.*, 41 B. T. A. 533, we held that the question whether a particular transfer occurred in connection with a reorganization is to be determined by the provisions of the revenue act governing the year in which the transfer was made. The same question is not presented here. In view of the identity existing between the applicable provision of both statutes, the result will be the same whether that of the amended 1936 Act or that of the code be applied. *Cf. Muskegon Motor Specialties Co.*, 45 B. T. A. 551, 557–558 (on appeal, C. C. A., 6th Cir.).

The respondent contends that the agreement by the petitioner to pay the expenses incurred in connection with the reorganization proceeding was not such an assumption of liability as is covered by the statute. The argument is that the liability assumed was not a liability of the predecessor corporation, antedating the transaction in question, but was a part of the cost of obtaining clear title to the assets; that the assets were, in effect, acquired for stock *and cash;* and, therefore, that the transaction failed to meet the statutory requirements of a reorganization, under the rule of *Helvering* v. *Southwest Consolidated Corporation, supra.*

[3] I. R. C. section 112 (g) (1) (B), as amended by section 213 (b) and (e), Revenue Act of 1939.

In *Claridge Apartments Co.*, 1 T. C. 163, we refused to hold that the payment of reorganization expenses by a transferee disqualified the transaction under the rule of the *Southwest Consolidated* case. We there pointed out that the payment does not go indirectly to the old corporation or its creditors, and that normally there is no source for payment save the new corporation or its property. That decision is dispositive of the question raised by respondent's contention here.

In *Helvering* v. *Alabama Asphaltic Limestone Co.*, 315 U. S. 179, the Supreme Court held that the elimination of the stockholders of the transferor corporation from any interest in the transferee does not deprive a transaction of its character as a reorganization, under the continuity of interest theory, where the transferor was insolvent and the effective command of its property was in the hands of its creditors. Although the petitioner here has not attempted to prove the insolvency of the Heights Hotel Co., its predecessor, we are none the less of the opinion that there was insolvency in fact. The provisions of the National Bankruptcy Act in force when the reorganization here in question was effected [4] make insolvency, or inability of the corporation to meet its debts as they mature, requisite to the consummation of the plan. As was said in *Central Hanover Bank & Trust Co.* v. *President and Directors of Manhattan Co.*, 105 Fed. (2d) 130 (C. C. A., 2d Cir.) :

> * * * In all reorganizations, the debtor must be insolvent in one sense or the other, § 130(1), 11 U. S. C. A. § 530(1). If its assets are not enough to pay its unsecured creditors, its shareholders must be eliminated, and in the ordinary sense they are the corporation. If the deficiency extends even to the secured creditors (there being no free assets, or substantially none) the only property to be reorganized is the security. * * *

It is true that in the *Alabama Asphaltic Limestone* case, *supra*, the Supreme Court was concerned with a reorganization where insolvency of the debtor in the bankruptcy sense, an excess of liabilities over assets, had been established by affirmative evidence. The absence of such an affirmative showing here nevertheless does not permit us to ignore the fact that under the plan, as consummated, stockholders of the Heights Hotel Co. received nothing for their shares. We can not assume that they sat quietly by and saw their interests extinguished if those interests had any value. Reason dictates that if any equity existed in the proprietors, not only would they have asserted it, but also that upon their failure to do so, the bankruptcy court would have required its recognition for them. That no such equity could have existed is even more clearly shown by the fact that

---

[4] Sec. 77 B, Bankruptcy Act of 1898, added by the Act of June 7, 1934, as amended by the Acts of August 20 and August 29, 1935; 11 U. S. C. A., sec. 207.

class II creditors, whose claims represented in excess of 44 percent of all secured claims, accepted in exchange less than 8 percent of petitioner's stock, all of which was issued to the secured creditors, classes I and II. Even as to creditors, alone, exclusive of the shareholders' rights, this was a plain case of less than enough to go around. We think that the controlling and determinative factors of insolvency of the debtor and effective command by its creditors over the property were present. That the holders of the mortgage bonds were creditors by reason of the debtor's assumption of liability for their payment does not render them any the less creditors. We conclude and hold that there was continuity of the proprietary interest in the two corporations, and that the petitioner acquired the property in question in connection with a reorganization, as that term is defined in the statute.

The respondent's further contention is that, even if the transfer did occur in connection with a reorganization, nevertheless sections 270 and 276 c. (3) of the National Bankruptcy Act, as added by the Chandler Act of June 22, 1938, 52 Stat. 840, as amended by the Act of July 1, 1940,[5] require a reduction of basis to fair market value of the property on June 30, 1936. His position is that petitioner's stock had a value of $83.33 per share; that the aggregate value of the 390 shares received by the holders of the note and the holders of the credit for advances was, therefore, approximately $32,500; that acceptance of the stock by the noteholders in satisfaction of their claims resulted in a cancellation of indebtedness of

---

[5] Sec. 270. [As amended by Public, No. 699, 76th Congress, 3d sess., approved July 1, 1940.] In determining the basis of property for any purposes of any law of the United States or of a State imposing a tax upon income, the basis of the debtor's property (other than money) or of such property (other than money) as is transferred to any person required to use the debtor's basis in whole or in part shall be decreased by an amount equal to the amount by which the indebtedness of the debtor, not including accrued interest unpaid and not resulting in a tax benefit on any income tax return, has been canceled or reduced in a proceeding under this chapter, but the basis of any particular property shall not be decreased to an amount less than the fair market value of such property as of the date of entry of the order confirming the plan. Any determination of value in a proceeding under this chapter shall not be deemed a determination of fair market value for the purposes of this section. The Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall prescribe such regulations as he may deem necessary in order to reflect such decrease in basis for Federal income-tax purposes and otherwise carry into effect the purposes of this section.

Sec. 276. c. the provisions of sections 77A and 77B of chapter VIII, as amended, of the Act entitled "An Act to establish a uniform system of bankruptcy throughout the United States," approved July 1, 1898, shall continue in full force and effect with respect to proceedings pending under those sections upon the effective date of this amendatory Act, except that—

\* \* \* \* \* \* \*

(3) sections 268 and 270 of this Act shall apply to any plan confirmed under section 77B before the effective date of this amendatory Act and to any plan which may be confirmed under section 77B on and after such effective date, except that the exemption provided by section 268 of this Act may be disallowed if it shall be made to appear that any such plan had for one of its principal purposes the avoidance of income taxes, and except further that where such plan has not been confirmed on and after such effective date, section 269 of this Act shall apply where practicable and expedient.

not less than $216,500, the difference between $249,000, the amount of principal remaining unpaid on the original note indebtedness, and the value of the 390 shares; that a reduction of the predecessor's basis by the amount of the indebtedness canceled would effect a reduction of petitioner's basis to an amount less than the fair market value; and hence that under the statute reduction to fair market value is required. This contention, too, may be disposed of by reference to our decision in *Claridge Apartments Co.*, *supra.* Following *Capento Securities Corporation*, 47 B. T. A. 691, we held that the substitution of common stock for bonds did not effect a cancellation or reduction of indebtedness, but rather amounted to a continuation of the obligation in another form. The same principle applies to the liability of the Heights Hotel Co. on its mortgage note. That indebtedness has not been discharged, but, by the consummation of the plan, has been transformed from a fixed indebtedness to a capital stock liability. Respondent does not make a similar contention with respect to the exchange of the mortgage bonds for stock.

In the *Claridge* case we went on to point out that the transaction there involved did result in the forgiveness of an unpaid interest indebtedness, although the amount forgiven was not shown. Being unable to say from the evidence whether the forgiveness had resulted in a tax benefit on any income tax return, we assumed in respondent's favor that it had, as to the entire undisclosed amount. Accordingly, it was held that the petitioner's basis must be reduced by the amount of indebtedness forgiven, but not to an amount less than the fair market value of the property. The facts in the instant proceeding are, in this respect, different from those with which we were there concerned. Although it is a fair inference that here, too, an undisclosed amount of interest was owing to the holders of the note and credit, it is apparent that here the claims for interest, as well as the principal indebtedness, were transformed into stock. The plan of reorganization described class II creditors as "The holder or holders of the debtor's Second Mortgage Seven Per Cent. Note—together with interest thereon—dated August 1, 1929 * * *; and the holder or holders of the credit—together with interest thereon—arising out of the advances * * * likewise secured by said mortgage * * *." It is stipulated that the proposed plan became effective on June 30, 1936, and was carried out. The necessary inference is that it was carried out in all its particulars without change. Upon its consummation, therefore, the 390 shares of petitioner's stock were received by the "creditors in Class II * * *, as a class, in full discharge of their claims * * *." It is plain that the entire note indebtedness, including liability for unpaid in-

terest, was treated as a single obligation, the whole of which was exchanged for petitioner's stock. There was no forgiveness of interest any more than there was of principal. This case, therefore, falls within the general rule of *Capento Securities Corporation*, *supra*, and is not, in this respect, governed by the *Claridge* case.

It follows that the reorganization entailed no reduction of indebtedness and that petitioner is entitled to employ the basis of its predecessor corporation, the Heights Hotel Co., in computing the depreciation deduction.

The respondent determined that the remaining useful life of the depreciable real estate was 30 years and that of the furnishings and equipment 7 years. There being no contradictory evidence, the determination in this respect is affirmed.

*Decision will be entered under Rule 50.*