Motor Mart Trust, Samuel L. Lowe, Charles M. Storey, Stanley R. Miller, Ernest Henderson, Trustees, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 2412.     Promulgated March 5, 1945.

*Stanley R. Miller, Esq.*, for the petitioner.
*J. T. Haslam, Esq.*, for the respondent.

932

OPINION.

Mellott, *Judge*: The history and purpose of the provisions of the Bankruptcy Act, authorizing what are commonly referred to as 77 B reorganizations, and the amendment of the law by chapter X of the Chandler Act in 1938, are too well known to require any extended discussion. The sections of the latter act, the applicability and effect of which are in issue here, are the ones recently—and since the filing of briefs herein—discussed by the Supreme Court in *Claridge Apartments Co.* v. *Commissioner*, 323 U. S. 141. In that case the Commissioner contended that the effect of section 276 (c)–3 was to require an adjustment to the basis of the property of the reorganized taxpayer (debtor) as provided in section 270. His theory was that such adjustment was required "for all tax years forward as to transactions in all proceedings in which a plan had been or should be confirmed, regardless of whether the proceedings were pending or had been closed on September 22, 1938 [the effective date of the Chandler Act]." *Claridge Apartments Co.* v. *Commissioner, supra.* The Court rejected this contention, limiting the application of the sections (268 and 270) "to proceedings pending when the Chandler Act became effective." The Commissioner makes the same contention here, notwithstanding the fact that the instant case is governed, partially at least, by section 276 (c)–2, the judge having found that it was "not practicable" to

apply any portion of the Chandler Act provisions in the reorganization proceeding referred to in our findings. For present purposes it will be assumed, although not decided, that this circumstance is unimportant. Cf. *United Gas Improvement Co.* v. *Commissioner*, 142 Fed. (2d) 216. We pass at once, therefore, to the principal question discussed by the parties upon brief, i. e., Was there a cancellation or reduction of indebtedness of the debtor within the purview of sections 268 and 270 of the Chandler Act?

The latter section, as the Court pointed out in the *Claridge* case, is complementary to the former. The history of the two "stems basically from *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, and subsequent decisions which have applied the principle of that case." As we pointed out when the case was before us (1 T. C. 173), "Section 268 is an obvious legislative effort to release 77 B reorganizations from the tax burden of the *Kirby* case," while section 270 is the reasonable correlative under which a new basis is provided to protect the revenue. In other words, without repeating what the Supreme Court so carefully and fully outlined as the history and effect of the two sections, section 268 relieves the reorganizing debtor from tax upon the profit, actual or apparent, resulting from "the adjustment of * * * [its] indebtedness in a" reorganization under the Bankruptcy Act or the Chandler Act, specifically providing that no income shall be deemed to have accrued to it (except as provided in section 269, where the principal purpose was the avoidance of taxes) "by reason of a modification in or cancellation in whole or in part of any of the indebtedness of the debtor" in the proceeding, while section 270 provides for an adjustment in basis to the extent that "the indebtedness of the debtor * * * has been canceled or reduced" in such proceeding.

Respondent admits "that the plan did not involve a cancellation of indebtedness"[1] and adheres to the view expressed in the letter, shown in part in our findings, "that *payment of indebtedness* by stock issue was not a cancellation giving rise to taxable income * * *."[1] He suggests, however, that petitioner places more reliance upon the letter than is justified and points out that the ruling is not now in issue, but, if it were, that he is "not bound by the opinion of a prior incumbent."[1] Cf. *James Couzens*, 11 B. T. A. 1040. These questions need not detain us. His argument in support of his determination really boils down to this: "Petitioner's basis must be decreased if the indebtedness was either *canceled or reduced*. Petitioner's indebtedness was *reduced* to zero."[1]

Petitioner's argument to the effect that "indebtedness of the debtor * * *, canceled or reduced" in a reorganization proceeding, as used in section 270, means, under the doctrine *ejusdem generis*, a "modification in or cancellation of * * * indebtedness" as used in section

---

[1] The quotations are from respondent's brief.

268, is not without substance. Decision, however, need not be rested solely on that ground. The question which really evolves is: Did the substitution of shares of common stock for bonds of the debtor effect a cancellation or reduction of its indebtedness? We think this question, with all due deference to the Circuit Court of Appeals for the Seventh Circuit, which expressed a contrary view in *Claridge Apartments Co.* v. *Commissioner*, 138 Fed. (2d) 962, must be answered in the negative.

In *Capento Securities Corporation*, 47 B. T. A. 691; affd., 140 Fed. (2d) 382, Capento had acquired $500,000 face value bonds of a corporation, all of the stock of which was owned by the same corporation that owned the Capento stock. The cost of the bonds to Capento was $15,160. The corporation which had issued the bonds—Production—needed working capital and borrowed $200,000 from a bank upon Capento's agreement that the obligation of the bonds was subordinated to the new loan. Later, when Production needed more money, it, by a transaction which the Board construed to be a recapitalization and hence a nontaxable reorganization, substituted preferred shares having a value of $50,000 for the $500,000 bonds. The Commissioner argued that Production had realized a gain of $450,000. In the opinion it was said, *inter alia:*

* * * The corporation had a liability of $500,000 on the bonds, having presumably borrowed that amount. While it discharged that liability, it created a new stock interest which became a balance sheet liability called capital stock. This is plainly different from the discharge of its indebtedness by the payment of money in a less amount than the indebtedness, as in *Kirby Lumber Co.* v. *United States*, 284 U. S. 1, and the cases which have followed it. To substitute a capital stock liability for a bonded indebtedness may have its advantages, as this case illustrates, but it can not be called a present realization of gain. The assets are not thereby freed from obligation. They become a subscription price contributed by the shareholder. * * * While the bond loan has been terminated, the amount borrowed is now committed to capital stock liability instead of to the liability of a fixed indebtedness.

The Circuit Court of Appeals for the First Circuit, after quoting the paragraph of which the above is a part, expressed the opinion that our decision seemed to be "only a question of proper tax accounting" and hence binding upon it, but added: "However that may be, the Board's reasoning seems to us persuasive and its conclusion right."

In *Alcazar Hotel, Inc.*, 1 T. C. 872, 879 (on appeal, C. C. A., 6th Cir.), stock of a reorganized debtor having a value of approximately $32,500 had been accepted by holders of bonds aggregating $249,000. The Commissioner made the same contention there that he makes here, viz., that there should be a reduction of the taxpayer's basis under section 270 of the Chandler Act to the fair market value of the property on the date of the exchange. We disposed of that contention on

the authority of *Claridge Apartments Co.*, 1 T. C. 163, and *Capento Securities Corporation, supra,* saying:

Following *Capento Securities Corporation,* 47 B. T. A. 691, we held [in the *Claridge* case] that the substitution of common stock for bonds did not effect a cancellation or reduction of indebtedness, but rather amounted to a continuation of the obligation in another form.

The reversal by the Supreme Court in the *Claridge* case had no effect upon the portion of our decision dealing with the cancellation of indebtedness. In the view which it took there was no necessity to approve or disapprove our action in that respect. We had held, following *The Commodore, Inc.,* 46 B. T. A. 718; affd., 135 Fed. (2d) 89, that no year earlier than 1938 would be affected by the Chandler Act. The Circuit Court of Appeals for the Seventh Circuit held (138 Fed. (2d) 962) that the years from 1935 to 1937, as well as 1938, were all affected. The Supreme Court held that none was; hence, it reversed both judgments. Our decision of the principal issue on the merits in favor of the taxpayer was not criticized. On the contrary, the Court-cited, apparently with approval, the *Capento Securities Corporation* case, *supra,* upon which we had relied.

Under the present facts, as in the *Alcazar Hotel Co.* case, there was no cancellation of indebtedness within the rule of the *Kirby Lumber Co.* case. There was a mere substitution of common stock for bonds in a reorganization proceeding. As pointed out by the Commissioner in his letter of May 13, 1933, there was an "exchange of its new convertible preferred shares and common stock for its first and second mortgage bonds and the accrued interest thereon." The obligation to make payment to the ones who had advanced the money for the construction of the building was continued in another form. It is therefore relatively unimportant that the balance sheet may have shown a reduction in indebtedness after the reorganization. Moreover, the view which we have taken seems to be in accord with that of the responsible officers of the Treasury Department when T. D. 4871, 1938—2 C. B., p. 130, was promulgated, modifying the regulations with reference to "Cancellation of Indebtedness." Therein the whole emphasis was placed upon the rule of the *Kirby Lumber Co.* case and cases stemming from it; and apparently no reason was thought to exist, justifying or requiring adjustment of basis in any other type of case. But however that may be, the position taken by us in the *Alcazar Hotel Co.* case requires that the present deficiency be set aside. Therefore,

*Decision will be entered for the petitioner.*

Reviewed by the Court.