OPINION. Opper, Judge: The correct depreciation basis for the property which petitioner acquired from its predecessor depends upon whether petitioner is entitled to take the basis of its transferor. That in turn goes back primarily to the question whether the transaction by which the property was acquired was a reorganization. Subdivision (a) (16) of section 113 of the Internal Bevenue Code refers the basis of property acquired, as this was, in 1934, to the provisions of the 1934 Act.[1] Section 113 (a) (7) of the 1934 Act, dealing with the basis after a reorganization, reads as follows: (7) TRANSFERS TO CORPORATION WHERE CONTROL OF PROPERTY REMAINS IN SAME persons. — If the property was acquired after December 31,1917, by a corporation in connection with a reorganization, and immediately after the transfer an in terest or control in such property of 50 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. * * * The definition of a reorganization, which is identical in the 1934 Act, as amended, with that included in the code, speaks of a reorganization as, among other transactions, “the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substantially all the properties of another corporation * * This is literally what happened when petitioner (“one corporation”) in exchange “solely” for “all” of its “voting stock” acquired all of the properties of its predecessor (“another corporation”). The conceded insolvency of the latter permits the continuity of interest requirement to be fulfilled by issuance of the new stock to the transferor’s creditors. Helvering v. Alabama Asphaltic Limestone Co., 315 U. S. 179; Palm Springs Holding Corporation v. Commissioner, 315 U. S. 185. Here, unlike the transfer in Helvering v. Southwest Consolidated Corporation, 315 U. S. 194, the acquisition was “solely” for all of petitioner’s “voting stock.”[2] And “The fact that the new company’s stock was issued to the old bondholders rather than to the old corporation is immaterial. Helvering v. New Haven & Shore Line R. R. Co., 121 Fed. (2d) 985.” Louis E. Stoddard, Jr., 47 B. T. A. 584, 589; reversed, other grounds (C. C. A., 2d Cir.), 141 Fed. (2d) 76. True, the new stock was not issued here to all the old creditors, but only to the holders of unsecured claims for advances to the old company. But, as the Court points out in the Alabama Asphaltic case, the full priority rule of Northern Pacific R. Co. v. Boyd, 228 U. S. 482, applies equally to bankruptcy and equity reorganizations. The upshot is that first mortgage bondholders having a prior lien on property sufficient to satisfy their claims are entitled to maintain that position and to be placed ahead of creditors holding unsecured claims or subordinate liens. See Case v. Los Angeles Lumber Co., 308 U. S. 106, 116. Bondholders whose rights and priorities are left unchanged, even though some other interests undergo an alteration, are not even affected by a reorganization and ordinarily have no standing to contest it. “A plan does not ‘affect’ the claims of creditors when they retain exactly what they had before: the claims of the bondholders in the case at bar are of this * * * kind.” Gross v. Bush Terminal Co. (C. C. A., 2d Cir.), 105 Fed. (2d) 930. It is when such prior-lien creditors are asked to surrender a portion of their secured interests that a court will seek to compensate them by a share in the equity ownership. In re Barclay Park Corporation (C. C. A., 2d Cir.), 90 Fed. (2d) 595. The converse of the full priority rule of Northern Pacific R. Co. v. Boyd is that a junior interest for which there remains in fact some value can not be excluded. Hence if stockholders have a remaining equity, the plan should make some provision for them.[3] By a similar process, it becomes necessary in evaluating a plan of reorganization to permit the most junior of the remaining interests to obtain a share of the equity ownership of the new reorganized enterprise, there being generally no lesser interest to which they can succeed. Thus, when, in the present case, it became evident that the old stockholders retained no effective portion of the remaining value of the old company, the junior creditors could be excluded only on the theory that the value of the assets was insufficient to satisfy the holders of prior liens. In re Barclay Park Corporation, supra. Stated somewhat differently, if the first and second mortgage bondholders were sufficiently protected by the continuation of their lien and the assumption of their bonds, see Gross v. Bush Terminal Co., supra, the remaining value must have belonged to the general creditors, who, under the Alabama Asphaltic rule, thereupon became the equity owners. It is not necessary that there be a complete participation in the reorganized company by all the members of that class. For example, if the claims are assumed by the new corporation, or even if those of a small minority are discharged in cash, both the continuity of interest and the 50 per cent interest or control requirements are satisfied. Southland Ice Co., 5 T. C. 842. Added to this is the reasonable presumption that in any adversary transaction the ultimate agreement will appropriately incorporate the true value of the contending interests. Alcazar Hotel, Inc., 1 T. C. 872. We think it follows that the transfer of control to the junior creditors upon insolvency and the ownership by them of the equity in the new corporation, subject to the assumption and continuation of the prior rights of the mortgage bondholders, effectively carried through in the reorganization the ownership and control which had already become an economic reality, and that under the rule of the Alabama Asphaltic case the reorganization and basis provisions are applicable. It may be that the further requirement of a 50 per cent interest or control “in the same persons” is not identical with the concept of continuity of interest. See Mertens Law of Federal Income Taxation, vol. 3, § 21.97. But, if not, it is difficult to see that the statutory requirement does not represent an a fortiori- case. It permits only a 50 per cent interest without control and appears to require merely that some of the persons interested in the new corporation be the same, at least where they represent a majority of the equity owners of the predecessor. See Rex Manufacturing Co., 37 B. T. A. 984; reversed other grounds (C. C. A., 7th Cir.), 102 Fed. (2d) 325. In the present situation the virtual ownership and control of petitioner’s predecessor by its general creditors and the issuance to them of all of petitioner’s securities more than satisfy these conditions. Muskegon Motor Specialties Co., 45 B. T. A. 551, 559; affd. (C. C. A., 6th Cir.), 134 Fed. (2d) 904. There having been a reorganization, section 113 (a) (7) does not require that it be tax-free. National Bank of Commerce of Seattle, 40 B. T. A. 72; affd. (C. C. A., 9th Cir.), 115 Fed. (2d) 875. But an adjustment is required for the gain or loss to the transferor, if any, recognized under the law in effect at the time the property was transferred. In this case that question is answered by the conclusion that there was no such gain or loss. The reorganization was tax-free under 112 (b) (4), reading “No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.” Clyde Bacon, Inc., 4 T. C. 1107. The result is that petitioner succeeded to the basis of its transferor without adjustment on account of any gain or loss on the transfer, and that that basis should be used in making the computations for the year in issue. Respondent’s determination is overruled. Presentation of the excess profits issue appears to leave no necessity for further discussion. We have already determined that the property was acquired in a reorganization, rather than by purchase, and that it was in exchange for the issuance of petitioner’s stock. “In this connection,” respondent cites the provision of section 718 (a) (2) of the code, which reads in part: “* * * Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange.” That basis having been determined, no further issue appears to remain. Likewise, the selection of the method for computing the tax as between that based on income and that based on equity invested capital should follow automatically. Reviewed by the Court. Decision will be entered under Rule 50. SEC. 113. adjusted BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of Property. — The basis of property shall be the cost of such property; except that— [[Image here]] (16) Basis established by revenue act of 1934. — If the property was acquired, after February 28, 1913, in any taxable year beginning prior to January 1, 1936, and the basis thereof, for the purposes of the Revenue Act of 1934 was prescribed by section 113 (a) (6), (7), or (8) of such Act, then for the purposes of this chapter the basis shall be the same as the basis therein prescribed in the Revenue Act of 1934. Assumption of the predecessor's liabilities may be disregarded. Southland Ice Co., 5 T. C. 842. “* * * Unless the property of the debtor exceeded in value the amount of the claims of creditors, the stockholders had no interest to protect or preserve. In re 620 Church Street Building Corporation, 299 U. S. 24, 27. * * * To justify a retention of a stock interest by present stockholders of the debtor, it should appear that they have furnished an additional “consideration or have an equity in the estate of the debtor after the rights of creditors are fully provided for. * * *” Price v. Spokane Silver & Lead Co. (C. C. A., 8th Cir.), 97 Fed. (2d) 237, 245.