OPINION. Disney, Judge: The question to be answered here is whether, under the facts above found, the petitioner is entitled to calculate depreciation upon the basis which the Clarksburg Glass Co. had in the property later owned by the petitioner, which in turn depends upon whether the facts involved in the acquisition of the property by the petitioner come within the ambit of certain sections of the Internal Revenue Code. Section 114 (a) provides that the basis for depreciation shall be the adjusted basis provided in section 113 (b), for the purpose of determining gain on sale or other disposition of property; while section 113 (b) provides that such adjusted basis shall be the basis determined under subsection (a), as adjusted. Section 113 (a) in turn provides, including subsection (7) (A), that the basis shall be the cost, except that: (7) Transfers to corporation. — If the property was acquired— (A) After December 31,1917, and in a taxable year beginning before January 1,1936, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them, * * * ******* then the basis shall be the same as it would be in the hands of the trans-feror * * *. Section 203 (h) of the Revenue Act of 1926, applicable to the transactions here to be considered, provides, inter oilia, as follows: (1) The term “reorganization” means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), * * * Two primary questions, therefore, are presented: First, whether the property here involved was “acquired * * * in connection with a reorganization,” as defined by the law applicable in 1926, and, second, whether, if there was a reorganization, a 50 per cent or more interest or control in the property “remained in the same persons or any of them.” Both elements must, of course, appear. We shall assume, without deciding, that the minimum 50 per cent interest in the property remained, after the transfer, in creditors of the old corporation, “or any of them,” within the statutory language, and shall assume also that there was insolvency, so that, under Helvering v. Alabama Asphaltic Limestone Co., 315 U. S. 179, the creditors may for this case be considered the equity owners of the old corporation ; for, in our opinion, there was no reorganization, and the petitioner can not prevail. There was a plan by some creditors to take over the corporate assets, resulting eventually in the acquisition, for cash, by two of them, of the majority stock of a corporation which purchased the assets of the old corporation from Pittsburgh, which had purchased at commissioner’s sale. But reorganization means that the transferor corporation, or some one representing the ownership of its property, stockholders or creditors, retains a “substantial stake” in the new corporation. Helvering v. Minnesota Tea Co., 296 U. S. 378; LeTulle v. Scofield, 308 U. S. 415. Such a fact is noticeably absent here, for the two creditors, Sine and Curtin, who participated in the ownership of the majority stock of the new corporation, held only a small fraction of the debts against the old corporation, even if, as in Montgomery Building Realty Co., 7 T. C. 417, we consider only the unsecured creditors. We do not think it can truly be said that the mere emerging in the new corporation of the holders of such a small amount of debts indicates the continuity of the old corporation requisite for “reorganization.” Here, in fact, only the creditors, and not the debts they held, emerge in the second organization, and the only connection the debts against the old corporation have with the new is to cause the creditors to help organize and buy stock in the new. Their new stock was issued for cash and not for the old claims, as in the Alabama Asphaltic Limestone Co., case, supra, and LeTulle v. Scofield, supra, and it is not easy to see a connection between old ownership (by creditors) and the new ownership in the petitioner. It is true, of course, as petitioner argues, that the statute literally requires only acquisition of substantially all of the properties of old corporations by new, but, just as we may not read that language as literally permitting a mere purchase, Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U. S. 462, so we may not neglect the requirement that there be a substantial part of the ownership of the old corporation merged or fused with the new entity. The petitioner has argued that stockholders of Clarksburg Flat Glass Co. became a part of the majority ownership of petitioner, thus representing a considerable part of the claims against the old corporation. We are, however, unable to agree with the view, for just as in the Alabama Asphaltic case the Court did not take into consideration the creditors’ stock-holdings in a corporation which was the parent of one of the reorganizing corporations, we think we may not here go so far afield as to disregard the corporate entity of Clarksburg Flat Glass Co. in order to find creditors. There the court said, “The equity interest in the parent is one step removed from the equity interest in the subsidiary.” Moreover, the stockholders in Clarksburg Flat Glass Co. who became stockholders in petitioner represent only a minority of the entire stock ownership in Clarksburg Flat Glass Co., so that we can not view them as representing that creditor. In addition, we note that though the petitioner rightly argues that the transaction should be viewed as a whole, and that passage of the property through a transitory owner to the petitioner does not necessarily prevent reorganization, Helvering v. Bashford, 302 U. S. 454; Gertrude B. Chase, 44 B. T. A. 39, nevertheless the nature of the property ownership by Pittsburgh forbids consideration of that company as a mere step in a reorganization. The petitioner points out that the plan was that Pittsburgh merely wished to receive the amount of its debt, and that it would be paid, and was paid, the inference being, apparently, that such fact supports the theory of a true plan of reorganization, originating prior to receiver’s sale and duly consummated when Pittsburgh was paid and it transferred to petitioner. It is true that letters set forth in the findings do indicate some idea, on Pittsburgh’s part, that it would, so to speak, “go along” with the plan if made whole on its claim; but closer examination of the entire facts shows that such was not in fact the arrangement, and that Pittsburgh was, in fact, left in the position of an independent owner of the property, rather than a step in the plan. For we note, first, that Pittsburgh had in mind also that, if it had to buy the plant at receiver’s sale, it would “either operate the same or dispose of it, as circumstances seem to indicate”; second, that in its offer to sell on June 8,1926, Pittsburgh set a dead line of 30 days, after which its offer would be “null and void” — not at all the act of a company obligated to be a mere transitory step in a merger, but indicative of its free and independent status as a vendor negotiating, on its own terms, a sale; and, third, the record indicates that the petitioner settled with Pittsburgh for less than the amount of its claim and expenses — again showing Pittsburgh not in the position of one contracting, as a part of the original plan, to take its debt and pass the property along. Petitioner on brief agrees with respondent’s statement that, “On June 29, 1926, settlement was effected between Pittsburgh Plate Glass Company and Adamston Flat Glass Company * * Had Pittsburgh been shown under agreement to take the amount of its debt and step out, and that plan had been carried out, more semblance to a reorganization might appear, but neither fact was proven. Pittsburgh, though having given its note for $66,500 in part payment for the property, is not shown to be freed therefrom by assumption, and received $153,969.85 an amount not sufficient to carry out the alleged plan to make Pittsburgh “whole” on the matter.[2] If there was such a plan, it is not shown to have been consummated, and Pittsburgh appears in the role of vendor, setting a time limit on its offer to sell, and actually selling for less than the alleged plan of reorganization contemplated. All this, in our view, destroys continuity between the old corporation and the new, for freedom of action on Pittsburgh’s part and that of petitioner in acquiring the property is inconsistent with the requisite continuity from one corporation to the other. No case cited, or of which we know, goes so far with the reorganization idea as to apply it to acquisition of property by settlement with an owner, after acquisition at a sale which ended ownership in the old corporation. The fact that any of the creditors, such as two, satisfies the provision of section 113 (a) (7) (A) as to 50 per cent interest does not, of course, satisfy as to definition of reorganization, under section 203 (h), Revenue Act of 1926. We conclude and hold that there was no reorganization, from which it follows that the petitioner is not, in calculating depreciation, entitled to use the basis of Clarksburg Glass Co. Therefore, Decision will be entered for the respondent. If on the other hand (as does not appear from the record to be the case) petitioner, in addition to the other payments made, assumed the $66,500 (apparently paid to the extent of $9,580.09) due from Pittsburgh to the special commissioners for sale, Pittsburgh is then seen to be receiving for the property, much more than the amount necessary to mate it whole on its debt; in other words, Pittsburgh then appears to be making a profit, inconsistent with the alleged plan of reorganization. Apparently, though the record does not explain, Pittsburgh as creditor, may have been able to receive back the $83,500 cash and $66,500 note given to the sale commissioners. Pittsburgh thus appears either making a profit or taking a loss. If it received back the $33,500, charged in purchase price to petitioner, then much profit was involved.