Estes Lumber Company, a corporation, v. Commissioner.
Estes Lumber Co. v. Commissioner
Docket No. 11986.
United States Tax Court
1947 Tax Ct. Memo LEXIS 53; 6 T.C.M. (CCH) 1159; T.C.M. (RIA) 47292; October 24, 1947
*53 John W. Gillon, Esq., 408 First National Bldg., Birmingham, Ala., for the petitioner. John R. Stivers, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion KERN, Judge: Respondent determined a deficiency in petitioner's income tax for the fiscal year ended October 31, 1941, in the amount of $231.85, a deficiency in excess profits tax for the same period in the amount of $331.44; a deficiency in income tax for the fiscal year ended October 31, 1942, in the amount of $178.55; and in excess profits tax for the same period in the amount of $850.74. Certain issues originally raised in the pleadings have either been settled by stipulation, or have been abandoned by the petitioner. The issue remaining for our decision is the proper basis under sections 113 (b) and 114 (a), Internal Revenue Code, of petitioner as to property owned by it during the taxable years. Respondent has determined that petitioner purchased this property in 1939 at a cost of $60,000, and has used this figure as petitioner's basis in computing depreciation thereafter and in determining gain on the sale of a part of this property. The facts as to this issue *54 are hereinafter set forth. All the facts are stipulated by the parties and we find them to be as stipulated. [The Facts] Petitioner is an Alabama corporation. It filed its income and excess profits tax returns with the collector of internal revenue at Birmingham, Ala. Since its organization in 1907 it has been engaged in the construction and building material business. It was financially successful until 1929. On May 30, 1931, the petitioner corporation and its stockholders then being insolvent, the stockholders pledged all the capital stock of petitioner with the First National Bank of Birmingham to secure all the corporation's indebtedness to general creditors. It had no funded debt. The bank agreed to release the stock upon payment of the indebtedness secured thereby. There were 31 shares of stock outstanding and they were held by the following persons in the amounts indicated: W. Thornton Estes
21 1/2 shares
T. H. Johnston
7 1/2 shares
Charles R. Estes
2 shares
No other stock was ever issued. The stockholders, who had been both officers and directors of petitioner, continued as officers, but resigned as directors and were succeeded on the board *55 of directors by representatives of the five principal creditors. It was agreed that the five creditors' representatives so constituting the board of directors should represent the creditors (a) in the matter of instituting and resisting bankruptcy or receivership proceedings and voting the creditors' claims; (b) in receiving and distributing payments on creditors' claims; (c) in allocating funds for the continued operation of the business; and (d) in handling the creditors' claims in all respects as if the board constituted the creditors. The creditors also agreed that no suit would be filed by them and that their claims would not be due so long as their representatives constituted the board of directors and deemed it wise to continue the operation of the business. Sometime between 1931 and 1939, T. H. Johnston died and his shares were later acquired by W. Thornton Estes, but, since the shares were pledged, no new certificates were issued. The business of the corporation continued to be operated under the active management of the officers, subject to the control of the directors. Its operations did not result in a profit, and on November 5, 1938, the board of directors voted to *56 cause petitioner corporation to file a petition in reorganization under the Chandler Act. The petition was filed in 1939 in the District Court of the United States for the Southern Division of the Northern District of Alabama. The balance sheet attached to the petition showed total assets (exclusive of "worthless notes and accounts receivable" of $242,641.48) amounting to $355,480.13, and liabilities, exclusive of capital stock, of $436,947.43, including "deferred accounts payable" in the sum of $345,070.30, and "deferred interest payable" in the sum of $82,899.95. The trustees appointed by the court submitted a plan of reorganization, which was later modified, and which plan as modified was confirmed by the court on October 5, 1939. Under the plan, as approved, the corporation turned over to the trustees in bankruptcy, to be liquidated for the benefit of creditors, certain assets not essential to the operation of the corporation's business, listed and described as Parcel A, and retained certain assets essential to the conduct of its business, listed and described as Parcel B, free and clear of all existing debts (except taxes, municipal assessments or liens), but subject to current *57 liabilities amounting to $8,904.10. These current liabilities were paid before the close of business on December 31, 1939. Under the plan, the corporation was to cause to be paid to it by its stockholders, as a paid-in surplus, $10,000, and the corporation, in turn, was to pay to the trustees in bankruptcy, that $10,000 in cash, and to execute and deliver to the trustees 3% first lien and pledge sinking bonds of the face amount of $50,000 secured by all property retained by it, except accounts receivable, money in bank, and inventory, all of which was accordingly done. It was contemplated that all administration expenses incident to the bankruptcy proceeding should be paid out of the $10,000 cash and the balance, if any, should be distributed to the creditors; and it was provided that the trustees should distribute to the creditors, when "convenient, economical and proper", the interest and moneys of the sinking fund received by them on account of the bonds. The paid-in capital of the corporation was thereby increased from $3,100 to $13,100. The assets retained by petitioner corporation, with their adjusted basis and fair market value on October 5, 1939, were as follows: Fair Market
Adjusted
Assets Retained
Value
Basis
Cash on hand and in bank
$ 9,374.71
$ 9,374.71
Accounts receivable
13,005.98
13,005.98
Notes receivable
1,917.58
1,917.58
Buildings and sheds at Vanderbilt Road Plant
36,000.00
67,698.00
Machinery and equipment at Vanderbilt Road Plant
12,715.99
12,715.99
Yard equipment
2,500.00
8,138.73
Office furniture and fixtures
1,419.37
1,419.37
Trucks and autos
2,142.39
2,142.39
Land, Vanderbilt Road Plant
18,000.00
38,322.00
Deposits, prepaid expenses, prepaid taxes
844.28
844.28
Stock in Concrete Products & Roofing Co.
6,875.00
6,875.00
Inventory
14,320.55
14,320.55
$119,116.15
$176,774.58
Liabilities
Accounts payable
8,904.10
8,904.10
Mortgage
50,000.00
50,000.00
Paid in surplus
10,000.00
10,000.00
Capital stock
3,100.00
3,100.00
Surplus resulting from reorganization
47,112.05
104,770.68
*58 The remaining useful life of the physical assets in petitioner's hands as of October 5, 1939, is Buildings
20 years
Machinery and equipment
10 years
Yard equipment
8 years
Furniture and fixtures
10 years
Trucks and autos
5 years
[Opinion] The question before us concerns the basis which petitioner is entitled to use for the property originally owned by it, retained by it throughout the reorganization proceedings under the Chandler Act, and still held by it in the tax years. Petitioner contends it is entitled to use its own adjused basis, reduced, as required by section 270 of the Chandler Act, [1] in an amount equal to the amount by which its indebtedness was canceled or reduced, but not below fair market value. This would result in the use of fair market value, the amount of which was stipulated and is set forth herein. Respondent, on the other hand, has adopted the position that the creditors of petitioner became the actual owners of the property of petitioner in 1931, and that the arrangement made in the bankruptcy court in 1939 in effect represented a sale by the creditors to petitioner of the property embraced in Parcel B in consideration of *59 $60,000 representing the face amount of the bonds delivered by petitioner to the trustees plus $10,000 in cash. Therefore, respondent contends that petitioner's basis as to this property is $60,000. *60 Before we can accord validity to respondent's contention it is necessary for us to agree with him that (1) petitioner's creditors were the actual owners of the property continued to be held in petitioner's name, and (2) the creditors in effect sold to petitioner the part of the property embraced in Parcel B. This we are unable to do. Respondent on brief admits that there are no decisions which directly support his position in the instant case. It is true, as respondent points out, that in determining whether there is continuity of interest, the creditors of an insolvent corporation who have "invoked the processes of the law to enforce their rights of full priority" are considered as stockholders, and therefore "the ownership of the equity in the [corporation's] property" is considered for that purpose as being in the creditors rather than the stockholders. See Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179. But no cases have held, and we are not disposed to hold, that as between the creditors and the corporation, the corporate property itself, as distinguished from the stockholders' equity in that property, is owned by the creditors rather than by the *61 corporation, in situations comparable with the one before us where title remains in the corporation, and a composition with creditors resulting in a continuation of the corporate enterprise is still a possibility. It follows that we are unable to accept respondent's other postulate, that the creditors sold to petitioner the property in Parcel B. Our analysis of the transaction is that petitioner corporation transferred to its creditors with their consent and the approval of the bankruptcy court that part of its property embraced in Parcel A, plus the bonds and cash in payment of its debts. The property involved here was not transferred at all as a result of the 77-B proceeding. It was originally purchased by, and had constantly been held by this petitioner. No transfer has occurred at any time. What did occur was the compromise and settlement of certain debts of the corporation by its transfer to its creditors of certain other corporate property plus the payment of an amount in cash and the issuance of bonds, leaving the remaining property retained by the corporation free of all claims of the creditors thus paid. It is our conclusion that since there was here no transfer of any *62 kind as to Parcel B, within the meaning of the statute, there was no taxable event, with respect to the property retained, which could have resulted under the Internal Revenue Code in a change of basis. The only property transferred was embraced in Parcel A and the basis of that property is not here in question. No transfer having, in this instance, taken place, as to the property embraced in Parcel B, there is no occasion for any change in its basis as provided for by the statute, except the reduction of such basis required by section 270 of the Chandler Act. Decision will be entered under Rule 50. Footnotes
1. SEC. 270 - Same; income tax property basis adjustment - In determining the basis of property for any purposes of any law of the United States or of a State imposing a tax upon income, the basis of the debtor's property (other than money) or of such property (other than money) as is transferred to any person required to use the debtor's basis in whole or in part shall be decreased by an amount equal to the amount by which the indebtedness of the debtor, not including accrued interest unpaid and not resulting in a tax benefit on any income tax return, has been canceled or reduced in a proceeding under this chapter, but the basis of any particular property shall not be decreased to an amount less than the fair market value of such property as of the date of entry of the order confirming the plan. Any determination of value in a proceeding under this chapter shall not be deemed a determination of fair market value for the purposes of this section. The Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall prescribe such regulations as he may deem necessary in order to reflect such decrease in basis for Federal income tax purposes and otherwise carry into effect the purposes of this section. As amended July 1, 1940; 11 U.S.C.A. 670, 54↩ Stat. 709.