OPINION. Johnson, Judge: Petitioner reported no profit from sale of the three mills, treating as their bases to it fair market value at the time that the shareholders transferred them to it, which value was deemed equal to their selling price a short time thereafter. Having received the mills as a liquidating distribution from Rice just before transferring them to petitioner, the shareholders used that value in reporting gain on receipt of the respective mill interests distributed to each as a liquidating dividend. Despite this, the Commissioner computed a gain to petitioner on its sale to the mills by use of Rice’s bases, and he defends that determination by the argument that the transfers to petitioner were made pursuant to a preconcerted plan of reorganization as defined by section 112 (g) (1) (D), Internal Revenue Code;[1] that no gain or loss was recognizable at the time of the transfers, section 112 (b) (4),[2] and, hence, petitioner’s bases are those of the transferor, Rice. Section 113 (a) (7)[3] so provides. Admitting, as he must, that literally there was no transfer of the mills by one corporation to another, respondent characterizes Rice’s conveyance to its shareholders and their conveyance to petitioner as transitory phases of a preconcerted plan which were lacking in substance and which should be disregarded for tax purposes under the doctrince of Helvering v. Alabama Asphaltic Limestone Co., 315 U. S. 179; Griffiths v. Commissioner, 308 U. S. 355; Higgins v. Smith, 308 U. S. 473; and Gregory v. Helvering, 293 U. S. 465. If they are disregarded, then Rice can be deemed to have transferred the mills to petitioner and immediately after the transfer Rice’s shareholders were in control of the transferee, so that the factual conditions of a reorganization as prescribed by subsection (D), supra, are met. It seems settled that if all the steps taken were in pursuance of a reorganization plan to which Rice and petitioner were parties, the channeling of the mills through the shareholders may properly be disregarded. In sustaining the Commissioner’s contention that a reorganization was effected by shareholders’ transfers of liquidated assets to a new corporation which continued the business of the liquidating one, this Court so held in Richard H. Survaunt, 5 T. C. 665 (affirmed on this point (C. C. A., 8th Cir.), 162 Fed. (2d) 753), saying: It does not change the result that the stockholders acted as a conduit for the delivery of the assets, Mark Kleeden, 38 B. T. A. 821; * * * that the plan itself was not formally reduced to writing, Hortense A. Menefee, 46 B. T. A. 866; Walter S. Seller, 2 T. C. 371; affd. (C. C. A., 9th Cir.), 147 Fed. (2d) 376; certiorari denied, 325 U. S. 868; or even that the stockholders had a personal — as opposed to a corporate — reason for the arrangement. Lyon, Inc., 42 B. T. A. 1094; affirmed on other grounds (C. C. A., 6th Cir.), 127 Fed. (2d) 210. The evidence establishes and we have found that Rice’s liquidating distribution of the mills, the shareholders’ transfer of them to the newly organized petitioner for sale by it, and the shareholders’ acquisition of petitioner’s shares were steps of a preconcerted plan. While true that the shareholders’ resolution of March 23, 1943, directing that the mills “be declared out as dividends,” preceded their decision to organize petitioner, the time of distribution was left to the judgment of Rice’s directors, who alone could implement it, and they nicely correlated it with the plan adopted. When the directors took action, they were privy to the plan. Petitioner argues, however, that the plan, if any, was not a “plan of reorganization,” but of liquidation. The evidence supports this view: Rice had already sold one mill; it had attempted unsuccessfully to sell the three distributed; and its purpose to discontinue operations is manifest from its prior efforts to dispose of the business as a whole, from the stockholders’ resolution of March 23, 1943, to liquidate and dissolve, and from the dissolution which actually followed. It is equally clear that petitioner’s only purpose was a sale of the mills, not their operation. Attempts to interest one or more shareholders in continuing the rice business had failed, and at its first meeting petitioner’s board of directors instructed its officers to enter into sale negotiations. Petitioner’s cash resources of $29,894, paid for its shares, were wholly inadequate for operating purposes, being the estimated minimum required for the mills’ maintenance; none of Rice’s valuable trade-marks and trade names were acquired by petitioner; and no decision to operate was ever made by its directors. Negotiations to sell the mills, on the contrary, were promptly initiated and carried to a successful conclusion within a short time. This medium of sale through a corporation was prompted by apprehension of probate complications in case of the death of Gruendler, a large shareholder. It is thus apparent that, even though Rice did transfer the mills to petitioner, channeling them through its shareholders, and even though Rice’s shareholders were immediately thereafter in control of the transferee, as contemplated by section 112 (g) (1) (D), no business was reorganized or continued thereby and no business was ever intended. But to warrant an application of section 112 (g) (1) (D),it must appear that there was a transfer to petitioner: * * * made “in pursuance of a plan of reorganization” * * * of corporate business; and not a transfer of assets by one corporation to another in pursuance of a plan having no relation to the business of either * * *. [Gregory v. Helvering, supra.] As held by the Supreme Court in the Gregory case, the liquidation of a part of the transferor’s assets by the transferee is not such a purpose. It is true that petitioner sold assets and distributed the proceeds to its shareholders, while in the Gregory case the transferee merely distributed the assets in kind. Yet the sole object of the transfer in each case: “was the consummation of a preconceived plan, not to reorganize a business or any part of a business but to transfer [assets]. * * *” Respondent correctly argues that a statutory reorganization may comprise the liquidation of a corporate party to it, citing Morley Cypress Trust Schedule “5,” 3 T. C. 84. And to this may be added Survaunt v. Commissioner, supra; Love v. Commissioner (C. C. A., 3d Cir.), 113 Fed. (2d) 236; Fisher v. Commissioner (C. C. A., 6th Cir.), 108 Fed. (2d) 707; Helvering v. Schoelkopf (C. C. A., 2d Cir.), 100 Fed. (2d) 415, and others. But in all of these cases there was a continuance of business by the transferee corporation, and that fact was of crucial significance, for, as stressed in Survaunt v. Commissioner, supra: * * * The plan of reorganization must comprehend, and the new corporation created, must when consummated carry on in whole or in part the corporate business of the old corporation. * * * In the Gregory case the new corporation did not comply with these requirements of the statute. It never transacted any business connected with or related to the business enterprise carried on by the old corporation. Similarly, in George D. Graham, 37 B. T. A. 623 (second issue), no reorganization was held to result from a liquidating corporation’s transfer of its remaining assets to a new corporation formed solely to dispose of them and not to carry on any business. We are of opinion that petitioner did not acquire the mills in the course of a statutory reorganization and that the Commissioner erred in computing gain from the sale of them by use of their bases to Rice. Reviewed by the Court. Decision will he entered under Rule 50. Hill and Ofper, JJ., dissent. (1) The term “reorganization” means * * * (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the trans-feror or its shareholders or both are in control of the- corporation to which the assets are transferred * * *. (4) * * * No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization. (7) Transfers to Corporation. — If the property was acquired— ******* (B) In a taxable year beginning after December 31, 1935, by a corporation in connection with a reorganization, then the basis shall be the same as it would be in the hands of the transferor * * * [with adjustments for gain or loss previously recognized].