**SOHMER & CO., Inc. v. UNITED STATES**
(two cases).

United States District Court
S. D. New York.

Sept. 30, 1949.

Harry J. Stein, New York City, for plaintiff.

John F. X. McGohey, U. S. Atty., New York City, for defendant, Henry L. Glenn, Asst. U. S. Atty., New York City.

RIFKIND, District Judge.

These two suits, tried together, involve claims for the recovery of taxes alleged to have been illegally collected from the taxpayer. In dispute are the taxes for the years 1940 and 1941. For 1940 the taxes involved are income tax, declared value excess profits tax and excess profits tax. For 1941 they are income tax and excess profits tax. Except for a small item, relating to an excessive salary deduction, discussed hereinafter, both cases turn on one question of fact and one question of law.

The facts are not in serious dispute. Harry J. Sohmer had for many years been engaged in manufacturing and selling pianos. For some years he had been operating at a substantial loss. In January 1940, Sohmer and his creditors agreed upon a plan of reorganization which was duly consummated as of January 31, 1940. Pursuant to the plan, a corporation was organized under the name of Sohmer & Co., Inc., which is the taxpayer and the plaintiff in both suits. To this corporation, Sohmer transferred all of his assets devoted to the piano business. The corporation issued to Sohmer all of its capital stock and 30 year debentures of the corporation in two groups, one of $87,618.94 and another of $40,028.56. The corporation also assumed some, but not all, of Sohmer's liabilities. To the creditors whose liabilities were not assumed by the corporation Sohmer, as part of the plan, transferred all of the debentures received by him in full satisfaction of his liability to them. On January 31, 1940, Sohmer had accounts receivable, arising out of sales of pianos on the installment plan, in the face amount of $103,081.11. The agreement between Sohmer and the corporation designated the group of debentures consisting of $87,618.94 as consideration for the assignment of that asset to the corporation.

Sohmer had previously reported his receipts from accounts receivable on the installment basis, that is, he returned as income that proportion of each installment payment received which the gross profits to be realized on the sales made in each year bore to the total contract price of such sales in each year. Internal Revenue Code, § 44(a), 26 U.S.C.A. § 44(a).

It is unnecessary to go into the details of the returns as filed by the taxpayer and as recomputed by the Commissioner, since both parties agree that the Commissioner's additional assessments were correct if the transfer of assets (including the accounts receivable) from Sohmer to the taxpayer was tax free, that is, a transfer in which no gain or loss is recognized under the Internal Revenue Code. 26 U.S.C.A. § 112. If it was tax free then the taxpayer's basis for reporting income from these accounts receivable was incorrect, and should have been the same as Sohmer's. Internal Revenue Code, § 111(c) (d), § 112(b) (5), (h), (k), § 113(a) (8), 26 U.S.C.A. §§ 111 (c, d), 112(b) (5), (h, k), 113(a) (8).

The taxpayer insists that the transfer was not tax free. Its position is that, despite the fact that Sohmer obtained all its capital stock, Sohmer was not "in control" of it because it was insolvent and therefore beneficially controlled by its creditors from its inception. In support of this argument it relies on the proposition that where creditors of an insolvent corporation cause its assets to be conveyed to a corporation of which these creditors have control as stockholders, the transfer is tax free because prior to the transfer the creditors were already beneficially in control of the insolvent transferor and therefore no change of control was accomplished by means of the transfer. Helvering v. Cement Investors, Inc., 1942, 316 U.S. 527, 62 S.Ct. 1125, 86 L.Ed. 1649; Cf. Helvering v. Alabama Asphaltic Limestone Co., 1942, 315 U.S. 179, 62 S.Ct. 540, 96 L.Ed. 775.

The plaintiff's argument fails. First, I am not satisfied that the taxpayer was in fact insolvent at its inception. In order to find insolvency I would have to discredit the action of its directors as reflected in its minutes,[1] the action of the

---

1. One of the items which would have to be discredited is the resolution adopted by the board of directors at its first meeting on the 15th of February, 1940, as follows: "Resolved that in the opinion of the management of this corporation

672

stockholders and the plain evidence of its books of account.[2] None of these reflects a condition of insolvency. It is only for the purposes of this tax claim that the taxpayer would have the court reappraise its assets in order to find a deficit. I see no good reason why the taxpayer should not be bound by the records which it has itself created. The taxpayer being solvent, and its stock being wholly owned by Sohmer, there was no change of control when Sohmer transferred the assets. The transfer was, therefore, tax free within the precise terms of § 112(b) (5).

Second, even if I were to find that the corporation was insolvent, I would nevertheless conclude that the transfer was tax free. Confessedly, if the corporation was insolvent at its inception then so was Sohmer, for he transferred to it almost everything he had. (The one asset which he did not assign to the corporation was not enough to make up the deficiency asserted as establishing the corporation's insolvency.) Logically, it would seem to follow that if Sohmer's creditors were, because of the corporation's insolvency, beneficially in control thereof after its organization, then similarly they were beneficially in control of Sohmer's assets before the organization of the corporation. To escape that conclusion the taxpayer labors the distinction that, unlike the assets of a debtor corporation, the assets of an individual debtor are not regarded as a trust fund for creditors.

The trust fund theory serves a very useful purpose when kept within its proper province. It is useful when employed as a device for getting to the reality beneath the forms of corporate organization. Thus in Helvering v. Alabama Asphaltic Lime-

stone Co., 1942, 315 U.S. 179, 62 S.Ct. 540, 86 L.Ed. 775, the creditors of an insolvent corporation were treated as being in the shoes of the old stockholders from the time they invoked the law to enforce their rights of full priority.

Here plaintiff would exploit the theory not to get close to the truth but further away from it. For the purpose at hand, that of discovering whether there has been continuity or change of control, the distinction between the assets of an insolvent corporation and of an insolvent individual is quite without utility.[3]

I find both as a matter of fact and as a matter of law that there was no change of control when the assets moved from the transferor to the transferee in this case. Sohmer controlled them before; Sohmer controls them now. Or, if the taxpayer prefers, the creditors controlled them before and the creditors control them now.

It follows that the transfer from Sohmer to the corporation was tax-free within § 112(b) (5); that the basis used by the taxpayer was, therefore, erroneous; and that the taxpayer's basis should have been the basis in the hands of the transferor. The assessment with respect to this item was correct.

In 1941, the plaintiff corporation took a deduction from gross income in the amount of $6,193.17 as compensation paid to Harry J. Sohmer, Jr., a son of Sohmer who, after the formation of the taxpayer, became its president. The Commissioner disallowed $1,500 of this deduction on the ground that to this extent the compensation was in excess of a reasonable allowance. It appears from the corporation minutes and

the machinery, equipment, trade-marks, patent rights and good-will acquired by this corporation from Harry J. Sohmer doing business as Sohmer & Co. are reasonably worth the sum of $50,000 and should be shown as an asset upon the books of this corporation in said amount."

2. In its excess profits tax return for 1941 the taxpayer asserted receipt of $3,396.22 in property in payment for the stock issued. That, too, is incon-

sistent with the present claim of insolvency.

3. Cf. Helvering v. New Haven & S. L. R. Co., 2, Cir., 1941, 121 F.2d 985. "The legal procedure employed by the creditors is not material. The critical facts are that the old corporation was insolvent and that its creditors took steps to obtain effective command over its property." Palm Springs Holding Corporation v. Com'r., 1942, 315 U.S. 185, 188; 62 S.Ct. 544, 546, 86 L.Ed. 785.

from the testimony of both the Sohmers that young Sohmer was employed at a fixed salary of approximately $25 a week with the understanding that at the end of the year he would receive additional compensation depending upon production. Specifically, the resolution of the board of directors read: "Resolved, that Mr. Harry J. Sohmer, Jr. be employed by this corporation as production manager, and that his salary be on the basis of a drawing of approximately $25 per week, with the understanding that at the end of the calendar year, a bonus in such amount as the results of the year, in the opinion of the board of directors shall warrant, be paid to him."

In the course of the trial the defendant attempted to show that there had been acquiescence by Harry J. Sohmer, president of the corporation, in the disallowance of $1,500 on the salary paid to Sohmer, Jr. The testimony with respect thereto is less than satisfactory and I am not satisfied that there has been any such understanding, agreement or acquiescence.

■■ Nevertheless, since the burden of proving that the Commissioner's action was wrongful is upon the taxpayer, Botany Worsted Mills v. United States, 1929, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379; Miller Mfg. Co. v. Commissioner, 4 Cir., 1945, 149 F.2d 421, I am of the opinion that the Commissioner's action should not be set aside. Regulation 103, § 19.23(a)-8, provides that compensation to be deductible must be only in such amount "as would ordinarily be paid for like services by like enterprises under like circumstances". In the instant case it appears that Sohmer Jr., the son of the president, was 23 years old and was working at his first full time job. His prior experience was limited to work at the plant and elsewhere during school vacations. He had just been graduated from college when he entered upon this employment. A comparison of the $6,100 paid to this employee with that paid to the other employees is enlightening. Sohmer, Sr., who had spent his lifetime in the business, received a salary of $12,000 a year. Two vice-presidents who had been employed for over twenty years received between $6,000 and $8,000. Under the circumstances it was

not unreasonable for the Commissioner to conclude that, but for the family relationship, so large a salary would not have been paid to Sohmer, Jr.

Judgment for the defendant.