Connohio, Inc., Successor by Consolidation to Distribution Terminal Warehouse Company v. Commissioner. Distribution Terminal Warehouse Company v. Commissioner.
Connohio, Inc. v. Commissioner
Docket Nos. 22761 and 22771.
United States Tax Court
1950 Tax Ct. Memo LEXIS 21; 9 T.C.M. (CCH) 1105; T.C.M. (RIA) 50295; December 7, 1950
Frank J. Maguire, Esq., 1300 Benesee Bldg., Buffalo, N. Y., for the petitioners. William R. Bagby, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, Judge: Petitioners, successor and predecessor corporation, respectively, assail respondent's determination of deficiencies in income and excess profits tax for 1942 of $169.40 and $414.01, respectively, and claim an overpayment of $47,897.96 in excess profits tax for the same year. Certain adjustments are uncontested. Error is alleged with respect to the amount of respondent's allowance for depreciation deductions on certain assets, which depends upon the amount of their proper adjusted bases. Error is also alleged with respect to excess profits tax on the ground that the proper excess profits tax credit was not allowed, which depends upon *22 the correct amount of the average equity invested capital. The primary and controlling issue is whether the transfer of certain assets occurred in a tax-free reorganization under section 112, Internal Revenue Code. [The Facts] The facts were stipulated and are hereby found accordingly. Petitioner Distribution Terminal Warehouse Company, hereinafter called the New Company, filed its tax returns with the collector of internal revenue for the eighteenth district of Ohio. In 1930 The Distribution Terminal & Cold Storage Company, hereinafter called the Old Company, went into receivership, being indebted under a first mortgage indenture securing bonds with a par value of $2,200,000, and under a second mortgage securing a bond issue with a par value of $1,150,000. Throughout the existence of the receivership and subsequent reorganization, the operation of the business of the Old Company continued uninterrupted. On March 16, 1935, a final decree was entered, finding the face amount of the bonds to be due plus interest, ordering appraisal of the fixed assets, and decreeing sale of the property. The fixed assets, on which the first mortgage bondholders had *23 a prior lien, were appraised on April 4, 1935, at a value of $557,923 plus $126,027.09 as rents and profits thereof during receivership. On that date the first mortgage bondholders had a claim of $3,179,369.27 which was allowed as a secured claim to the extent of $683,950.09, the balance of $2,495,419.18 being allowed as an unsecured claim. There were unpledged assets aggregating $116,407.14, in which the interest of the second mortgage bondholder was determined to be $45,618.41. On May 17, 1935, the Old Company and the first mortgage bondholders filed petitions for reorganization under section 77B of the Bankruptcy Act. The receiver was appointed trustee. The plan of reorganization was approved by the Federal District Court on December 23, 1935, and became effective January 1, 1936. Pursuant to that plan the New Company was organized. In further pursuance of the plan the trustee paid $45,618.41 in cash to the second mortgage bondholder in full settlement of its claim; $34,817.32 in payment of expenses of reorganization; and transferred all remaining assets to the New Company which assumed the trustee's unpaid obligations of $40,986.49. The New Company issued to the first mortgage *24 bondholders $440,000 of 20-year 5 per cent mortgage bonds and 22,000 shares of common stock, exchanging $200 of bonds and 10 shares of stock of the New Company for each $1,000 of first mortgage bonds of the Old Company. The stockholders and the second mortgage bondholder of the Old Company did not receive any securities of the New Company. The final report of the trustee to the Court in the reorganization proceedings is dated January 15, 1936. The fixed assets transferred by the trustee to the New Company had a fair market value on January 1, 1946, of $544,455.78, while their adjusted bases to the Old Company were $2,082,206.18. In 1946 petitioner Connohio, Inc., was organized, resulting from the consolidation of the New Company and Southern New England Ice Co., Inc.
[Opinion] The parties agree that petitioner's claimed depreciation deduction is proper if it was entitled to use its predecessor's basis, which in turn depends on whether the 77B reorganization in which the properties were received was a non-taxable reorganization under section 112. We think it was. Respondent concedes that it would be such under Southland Ice Co., 5 T.C. 842, but insists that *25 the necessary continuity of interest is lacking. In making this contention he seems to us to be misconceiving the effect of Montgomery Building Realty Co., 7 T.C. 417, by urging that its whole emphasis requires a continuing interest of each class of creditors. There it was assumed that the value of the assets involved was great enough to leave the first mortgage holders undisturbed as owners of the prior lien, and hence that the junior creditors in effect owned the company. Here it is apparent from our findings that the first lien bondholders were also unsecured creditors and the creditors were the effective equity owners. Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179. That a small percentage of this total group of claimants were paid in cash out of assets retained by the trustee is no more damaging here than in Southland Ice Co., supra.We think respondent was in error. Peabody Hotel Co., 7 T.C. 600. For similar reasons there can be little doubt, and respondent does not raise any question, as to petitioner's right to use the same basis for purposes of computing its equity invested capital. Internal Revenue Code, section 717 *26 . The remaining controversy is not stated as an alternative, but it seems to us it must be such. The entire payment of excess profits taxes for 1942, the only year before us, is stated to require refund if the first point is favorably disposed of. No more could possibly be due if the benefit of net loss carry-backs from 1943 and 1944 were also granted. For that reason we intimate no opinion on that question. Decisions will be entered under Rule 50.