**BAUSCH & LOMB OPTICAL COMPANY,
Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 239, Docket 25424.**

United States Court of Appeals
Second Circuit.

Argued March 6, 1959.

Decided May 19, 1959.

---

76

Hugh Satterlee, Washington, D. C. (Scott Stewart, Jr. and Thomas C. Taylor, Rochester, N. Y., on the brief), for petitioner.

Morton K. Rothschild, Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum and Melvin L. Lebow, Attorneys, Department of Justice, Washington, D. C., on the brief), for respondent.

Before MEDINA and HINCKS, Circuit Judges, and MATHES, District Judge.*

MEDINA, Circuit Judge.

Petitioner Bausch & Lomb Optical Company, a New York corporation engaged in the manufacture and sale of ophthalmic products, on March 1, 1950 owned 9923¼ shares of the stock of its subsidiary Riggs Optical Company, or 79.9488% of the 12,412 outstanding shares of Riggs. In order to effectuate certain operating economies, Bausch & Lomb decided to amalgamate Riggs with itself. To this end on April 22, 1950 Bausch & Lomb exchanged 105,508 shares of its unissued voting stock for all of the Riggs assets. An additional 433 shares of Bausch & Lomb stock went to 12 Riggs' employees.

On May 2, 1950, according to a prearranged plan, Riggs dissolved itself, dis-

* United States District Judge for the Southern District of California, sitting by designation.

tributing its only asset, Bausch & Lomb stock, pro rata to its shareholders. Bausch & Lomb thus received back 84,-347 of its own shares which became treasury stock, while 21,161 shares went to the Riggs minority shareholders.

The Commissioner determined that the substance of these transactions was that Bausch & Lomb received the Riggs assets partly in exchange for its Riggs stock and partly for its own stock, and that the gain which Bausch & Lomb realized upon the Riggs "liquidation" was subject to tax. In other words, that Bausch & Lomb parted with 21,161 shares of its own voting stock, plus 9923¼ shares of its Riggs stock, for the transfer to it of all of the Riggs assets. Bausch & Lomb contends, however, that a "reorganization" was effected under Section 112(g) (1) (C) of the 1939 Internal Revenue Code,[1] and that it is therefore entitled to tax-free treatment.[2] The Tax Court sustained the Commissioner's position and held that the acquisition of the Riggs assets and the dissolution of Riggs must be viewed together, and that the surrender by Bausch & Lomb of its Riggs stock was additional consideration. The Tax Court accordingly held that the Riggs assets were not obtained "solely for all or a part of its voting stock." We agree.

Bausch & Lomb concedes that to qualify as a "C" reorganization, it could not furnish any additional consideration over and above its own stock. Helvering v. Southwest Consolidated Corp., 1942, 315 U.S. 194, 62 S.Ct. 546, 86 L.Ed. 789; Adwood Corp. v. Commissioner, 6 Cir., 1952, 200 F.2d 552, certiorari denied 346

U.S. 818, 74 S.Ct. 30, 98 L.Ed. 344; Stoddard v. Commissioner, 2 Cir., 1944, 141 F.2d 76. Moreover, Bausch & Lomb admits, as the correspondence and minutes of pertinent meetings plainly show, that the acquisition of the Riggs assets and the dissolution of Riggs were both part of the same plan. Nevertheless, Bausch & Lomb asserts that the exchange of the Riggs assets for its stock should be treated as separate and distinct from the dissolution. The argument runs to the effect that, if the two steps are viewed apart from one another, a "C" reorganization is effected.

Petitioner contends that, even if a qualification according to the literal terms of Section 112(g) (1) (C) is not found, the amalgamation was in substance a "reorganization" because it has the attributes of one, including "continuity of interest" and business purpose. This is factually not quite true for, while the amalgamation may have been for genuine business reasons, the division into two steps served only to facilitate the liquidation of Riggs. It was considered easier to distribute Bausch & Lomb stock than distribute the Riggs assets. Hence the "business purpose" of dividing the liquidation into two steps lends no support to Bausch & Lomb's contention that in substance and actuality a reorganization was achieved. Moreover, the Congress has defined in Section 112 (g) (1) (C) how a reorganization thereunder may be effected, and the only question for us to decide, on this phase of the case, is whether the necessary requirements have been truly fulfilled. It is for the Congress and not for us to say whether some other alleged equivalent

---

1. Section 112(g) (1) (C) provides:

    "(1) The term 'reorganization' means

    * * *

    "(C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substantially all the properties of another corporation, but in determining whether the exchange is solely for voting stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded, * * *".

2. Section 112(b) (3) provides:

    "(b) *Exchanges solely in kind.*

    * * * * *

    (3) *Stock for stock on reorganization.* No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

set of facts should receive the same tax free status.

Nor does the fact that Bausch & Lomb may well have desired to hold the 84,347 shares of its own voting shares as treasury stock change our opinion of the transaction as a whole.

Bausch & Lomb suggests that under our present holding even if it had but a 1% interest in Riggs, the requirement that the acquisition be "solely for * * its voting stock" could defeat Section 112 (g) (1) (C) reorganization treatment. This hypothesis is a far cry from the facts disclosed in this record, and the lack of controlling interest surrounds it with a mist of unreality. In any event, it will be time to consider such a situation in all its aspects when, as and if it comes before us. We merely hold that the attempt to thwart taxation in this case by carrying out the liquidation process in two steps instead of one fell short of meeting the requirements of a "C" reorganization. See Gregory v. Helvering, 1935, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596; Helvering v. Alabama Asphaltic Limestone Co., 1942, 315 U.S. 179, 62 S.Ct. 540, 86 L.Ed. 775; Helvering v. Bashford, 1938, 302 U.S. 454, 58 S.Ct. 307, 82 L.Ed. 367; Minnesota Tea Co. v. Helvering, 1938, 302 U.S. 609, 58 S.Ct. 393, 82 L.Ed. 474.

Of course, the fact that Bausch & Lomb "could have" merged with Riggs and hence qualified the transaction as a reorganization under [section 112(g) (1) (A)] is beside the point. For reasons of its own it chose not to do so.

This is clearly not an "A" reorganization.

■ Bausch & Lomb also claims that a tax-free liquidation was effected under Section 112(b) (6) (A),[3] although it plainly lacked the necessary 80% of the voting stock. This belabored effort to claim ownership of the 51 shares of Riggs voting stock for which 12 of Riggs' employees had received credit on Riggs' books, so as to raise Bausch & Lomb's interest slightly above the 80% required by Section 112(b) (6) (A) has nothing whatever to commend it. As found by the Tax Court, Bausch & Lomb never was the legal or equitable owner of these shares, there was never any agreement on the part of the employees to assign them to Bausch & Lomb, and the original stock purchase agreements of the Riggs employees provided that if Riggs should be reorganized and its business acquired by another corporation, a successor corporation would have the right to assume the contract and substitute its stock in the place of the Riggs' stock originally reserved under the stock purchase agreements. New arrangements were made later, in line with the provision of the original stock purchase agreements just referred to, and the employees received certain cash payments and the 433 shares of Bausch & Lomb stock mentioned in the opening part of this opinion. We find in the facts of this case no foundation whatever for the claim that a liquidation was effected under Section 112(b) (6) (A).

Affirmed.

3. Section 112(b) (6) (A) of the 1939 Code provides:

"(6) *Property received by corporation on complete liquidation of another.* No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. For the purposes of this paragraph a distribution shall be considered to be in complete liquidation only if—

"(A) the corporation receiving such property was, on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock (in such other corporation) possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and the owner of at least 80 per centum of the total number of shares of all other classes of stock (excepting nonvoting stock which is limited and preferred as to dividends), and was at no time on or after the date of the adoption of the plan of liquidation and until the receipt of the property the owner of a greater percentage of any class of stock than the percentage of such class owned at the time of the receipt of the property; * * * ".